**EMPIRE RAYON YARN CO., Inc.,**
**Plaintiff,**

v.

**AMERICAN VISCOSE CORPORATION,**
**Fred Malina, Arthur Malina, Edythe M.**
**Charnas and Fred H. Diamond, co-part-**
**ners doing business as Malina Com-**
**pany, Gutner Brothers Corporation and**
**Shawmut, Inc., Defendants.**

United States District Court
S. D. New York.
March 31, 1958.

Sweet, Reinitz, Peskin & Sweet, New York City, Jacob Greenwald, New York City, of counsel, for plaintiff.

Jackson, Nash, Brophy, Barringer & Brooks, New York City, John G. Jackson, Raymond M. Tierney, New York City, of counsel, for defendant American Viscose Corp.

Silver & Bernstein, New York City, Nahum A. Bernstein, New York City, of counsel, for defendant Malina Co.

Herbert S. Greenberg, New York City, for defendant Gutner Bros. Corp.

E. Compton Timberlake, New York City, for defendant Shawmut, Inc.

WEINFELD, District Judge.

These are cross-motions for summary judgment in a treble damage suit wherein the plaintiff charges the defendants with alleged illegal price discrimination in violation of § 2 of the Robinson-Patman Act, 15 U.S.C.A. § 13.

The plaintiff deals in viscose rayon yarn. Its activities are of a twofold nature: (1) the converting or processing of yarn purchased by it from the major producers of rayon and then selling the processed yarn, and (2) the reselling of yarn in the original condition and package as purchased by it from major manufacturers or producers. In this latter instance plaintiff asserts it functions as a jobber. The basis of its charge of price discrimination centers about only that merchandise which it purchased, or seeks to purchase, in connection with its jobbing activities from the defendant

American Viscose Corporation, hereinafter referred to as "American".

American is a major producer of unprocessed viscose rayon yarn. The bulk of its product is sold and distributed directly by it to the textile trade. But with respect to a small portion of its output it has found it more economic and convenient to sell to jobbers who sell and service smaller units of the textile trade at lower selling costs than would be the case if it sold directly.[1] American in carrying out this policy through the years has designated three firms to act as jobbers and they are named as co-defendants in this action. They are referred to hereafter as the "jobber defendants". The defendant Gutner acts only as a jobber, i. e. selling yarn in the original condition and package as purchased from manufacturers whereas the other two co-defendants Malina and Shawmut function as jobbers and processors. The defendant Malina is a jobber only of American's products whereas the other two jobber defendants also resell rayon of other manufacturers.

All rayon sales by American, whether to the jobber defendants, the plaintiff, or to other purchasers have always been made at American's published price list. However, in the instance of the jobber defendants American, pursuant to written agreements with each, grants a five per cent discount from the list price on all yarn resold by them in the original packages. It is this discount which plaintiff contends unlawfully discriminates against it and is the hard core of the controversy. The gist of the plaintiff's complaint, in its four separately stated causes of action charging violations of subdivisions (a), (c) and (e) of § 13 of 15 U.S.C.A. is that American has denied it the same discount although it is qualified to render the same jobbing services to American as that rendered by the jobber defendants.

Accordingly, the plaintiff in addition to money damages seeks to compel American to grant it the same discount and the same terms and conditions of sale as granted to the three jobber defendants with respect to merchandise purchased for resale and not for processing or else to cancel the discount granted to co-defendants.

American justifies the discount on the ground that the jobber defendants render a functional service in the distribution, selling and servicing of American's products to smaller units and at lower selling cost than would be the case if American itself sold directly to such consumers. In short, it contends that not only is there justification for the discount granted to the jobbers but it has validly and reasonably classified its customers into processors and jobbers based on functional differences in the services performed.

Under its contracts with the jobbers the discount is allowed not, upon the original purchases by them from American, but only after proof has been submitted of compliance with specified conditions, enumerated in detail, which are intended to assure that the discount is applied only to that merchandise which the jobbers resell in the original packages at list prices.[2] Under this circumstance the jobber defendants pay to

---

1. American's right to distribute a part of its product directly to the ultimate consumer and a part through wholesale distributors or jobbers is not questioned. Cf. Chicago Sugar Co. v. American Sugar Refining Co., 7 Cir., 176 F.2d 1, 10, certiorari denied 338 U.S. 948, 70 S.Ct. 486, 94 L.Ed. 584, and cases there cited.

2. The contract obligates the jobber to sell at American's list prices and only in fair trade states. The procedure set up therein appears intended to assure control of resale channels and resale prices and that the discounts are paid only upon resale merchandise. For a discussion of this aspect of the functional discount and its approval see Report of the Atty. Gen.'s Comm. on the Antitrust Laws p. 204 (1955). It is interesting to note that even a dissenting member of the Committee was of the opinion that "the dual distributor should receive a functional discount only on those goods which he resells as a wholesaler". P. 209. Also cf. Standard Oil Co. v. Federal Trade Comm., 7 Cir., 173 F.2d 210, reversed on other grounds 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239.

American the same published list price, as does the plaintiff and all other purchasers, for that portion of their purchases which they use in processing as distinguished from reselling.

According to the defendants the function and services the jobber defendants perform with respect to the distribution of rayon yarn include the maintenance of large inventories, the maintenance of warehousing facilities, the risk of price fluctuations on inventories, the assumption of credit risk upon sales to consumers, the maintenance of a selling force, advertising of American's products, and the furnishing of technical assistance to users of rayon. The plaintiff disputes that the services are rendered on behalf of American but rather that they are functions which each jobber performs for itself and on its own behalf in the redistribution of rayon. Somewhat anomalously, based upon its assertion that it has the necessary facilities and qualifications to perform for American the jobbing services to the same extent as the jobber defendants, the plaintiff seeks the same discount which, if in fact is discriminatory, would in turn discriminate against other customers of American who might claim to be qualified to be accorded a jobber classification.

American questions that plaintiff's qualification to deal in American's products as a jobber, as distinguished from its processing activities, is equal to that of the jobber defendants and challenges that plaintiff was a purchaser for resale of its merchandise or performed the same services rendered by the jobber defendants. What in effect American contends is that the purchases made by plaintiff were for its own consumption in processing rayon and hence it was not in competition with the jobber defendants in the distribution of rayon on a resale basis. Thus in addition to a dispute on this essential issue, there is also the basic issue whether the defendants in fact performed services in the distribution of American's products different from those of the plaintiff which justified the discount. Another essential issue in dispute is whether American's classification of its customers into jobbers and processors is reasonably based upon different functions performed by each.[3] Clearly these disputes alone preclude the granting of plaintiff's motion for summary judgment.

But the case bristles with other controverted issues. Assuming arguendo that the discount is a prohibited discrimination, each jobber defendant has denied that it was knowingly received which if so would appear to defeat any claim against them.[4]

There are still other challenged issues of fact. On this motion for summary judgment the plaintiff apparently has confined its claim to a charge that the discount was a payment in lieu of brokerage as condemned in subdivision (c) and, if compensation for services, is a violation of subdivision (e) of § 13 of the Act.[5] However, the complaint also charges a violation of subdivision (a) dealing with discrimination in prices

3. Cf. Federal Trade Comm. v. Rubberoid Co., 343 U.S. 470, 475, 72 S.Ct. 800, 96 L.Ed. 1081; Standard Oil Co. v. Federal Trade Comm., 7 Cir., 173 F.2d 210, 217, reversed on other grounds 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239; Matter of Champion Spark Plug Co., 50 F.T.C. 30.

4. Automatic Canteen Co. v. Federal Trade Comm., 346 U.S. 61, 73 S.Ct. 1017, 97 L. Ed. 1454.

5. Concomitantly with narrowing its motion to reliance on subdivision (c) the plaintiff has urged that Southgate Brokerage Co. v. Federal Trade Comm., 4 Cir., 150 F.2d 607, 609, is directly in point and compels summary judgment in its favor. In the Southgate case there was no dispute that in fact the alleged violator had received "brokerage * * * or a discount in lieu thereof"; here the defendants dispute that the five per cent (5%) discount is in fact "brokerage * * * or a discount in lieu thereof". Also in the Southgate case the alleged violator exacted a discount on all its purchases while here the discount is granted only on those purchases which in fact are resold in the original package. Thus in at least two major aspects the Southgate case is factually different from the instant case.

generally and this cause of action is incorporated by reference into all the three remaining causes of action. In answer to the claim of violation under subdivision (a), the defendants advance a defense of justification for price differential based on actual cost savings, as expressly permitted under the Act. This defense, if sustained apart from other contentions of the defendant, would appear sufficient to meet the plaintiff's attack on the discount made under subdivisions (c) and (e). This would be so even though the essential elements necessary to sustain a claim under the latter provisions are less onerous[6] than those required to uphold a violation under subdivision (a).

The very issues which require the denial of the plaintiff's motion extend over to, and also require the denial of, the cross-motion made by the defendants for summary judgment. American bases its motion (joined in by the other defendants) principally on its right to select and appoint its jobbers—in short that it cannot be compelled to accord jobber status to the plaintiff. Undoubtedly American has, barring any prohibited conduct, the absolute right to deal with whom it will in the conduct of its business.[7] But acknowledgment of this right does not necessarily compel the granting of the defendant's cross-motion. American has heretofore sold its rayon to the plaintiff as well as to the jobber defendants and others. In so doing it was, of course, bound not to engage in any discriminatory or other practice against the plaintiff as condemned by the Robinson-Patman Act. Whether the designation of the jobber defendants was used as a device to permit the granting of discriminatory discounts or allowances in their favor, not justified under any of the permissible exceptions of the Act, such as cost differentials, the free selection of customers, or the reasonable classification of customers based on functional differences, presents an issue of fact which does not lend itself to disposition on a motion for summary judgment under Fed.Rules Civ.Proc. rule 56, 28 U.S.C.A., in view of the conflicting claims of the parties.

The various motions made by the respective parties are all denied.

Settle order on notice.

---

6. See, Southgate Brokerage Co. v. Federal Trade Comm., 4 Cir., 150 F.2d 607.

7. 15 U.S.C.A. § 13(a); Naifeh v. Ronson Art Metal Works, Inc., 10 Cir., 218 F. 2d 202; Green v. Victor Talking Machine Co., 2 Cir., 24 F.2d 378, 382, 59 A.L.R. 1091.