### In re WHITNEY & COMPANY, a corporation.
### No. 16476.

United States Court of Appeals
Ninth Circuit.
Nov. 18, 1959.

James E. Corkey, Asst. Gen. Counsel, John W. Carter, Jr., Atty., Federal Trade Commission, Washington, D. C., for petitioner.

Bogle, Bogle & Gates, Robert Graham, Seattle, Wash., for respondent.

Before BONE, POPE and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

### Statement of Proceedings

This is a criminal contempt proceeding instituted by this court pursuant to 18 U.S.C.A. § 401(3).[1] The respondent is Whitney & Company, a Washington corporation. This company engages in the business of packing, selling, and distributing canned salmon and other seafood products.

On March 25, 1946, in proceedings before the Federal Trade Commission,[2] an order was entered requiring Whitney to forthwith cease and desist from:

"Paying or granting, directly or indirectly, to any buyer, anything of value as a commission or brokerage, or any compensation, allowance or discount in lieu thereof, upon purchases made for such buyer's own account."[3]

---

1. Section 401:
"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

\*    \*    \*    \*    \*

"(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

2. In the Matter of Carl Rubenstein et al., Docket No. 5279.

3. This order was intended to invoke and enforce section 2(c) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(c). Section 2(c) reads as follows:
"It shall be unlawful for any person engaged in commerce, in the course of

The cease and desist order was affirmed by this court. Federal Trade Commission v. Whitney & Company, 9 Cir., 192 F.2d 746. Thereafter, and on April 1, 1955, this court entered a decree commanding Whitney to comply with and obey the above-quoted Commission order.

On May 22, 1959, the Federal Trade Commission filed a memorandum placing certain facts before this court concerning Whitney's asserted disobedience of the decree of April 1, 1955. On the same day we issued an order requiring the company to show cause why it should not be found guilty of criminal contempt and be punished therefor.

Certified copies of the show cause order and of the memorandum of the Federal Trade Commission were served upon the company by the United States Marshal. The company filed a timely response and a supporting memorandum. A memorandum in reply was filed by the Commission and the matter was argued orally before the court on October 12, 1959.

The described contempt proceedings bring into question two unrelated transactions entered into by Whitney subsequent to our decree of April 1, 1955. These transactions are separately discussed in the next two sections of this opinion.

### Sale to Nakat Packing Corporation.

In June 1956 Whitney undertook to act as broker for American Packing Co., of Seattle, in connection with the sale of 810 cases of canned salmon. Whitney advised American that Whitney would undertake to sell this salmon for the account of American at a price to the consuming trade of fifteen dollars per case less usual trade discounts for cash, swell, and label allowances and for a 5% brokerage commission to Whitney. This would result in a net to American of $14.25 per case, less cash, swell, and label allowances. In so advising American, Whitney intended that if it was unable to sell the salmon for the account of American at that price, Whitney would purchase the 810 cases for its own account.

Whitney was of the opinion that it could sell this salmon to Nakat Packing Corporation, of Seattle, or other purchasers in the consuming trade for fifteen dollars per case and endeavored to do so. Nakat, however, was unwilling to pay fifteen dollars per case for this salmon.[4]

Thereafter, Whitney, in its own name and for its own account for resale, purchased these 810 cases of salmon from American. No brokerage services were performed by Whitney in connection with this purchase for its own account. The 810 cases were sold to Whitney by American in two lots, a separate invoice being issued by American for each lot.

On each of these invoices the price of fifteen dollars per case was shown, subject to discounts for cash, swell, and label allowances, and "Less 5% Brokerage." Similarly, the two documents entitled "Account of Sale," issued by Whitney to American covering these two lots, show a price of fifteen dollars a case, with like discounts, "Less 5% Commission."

After purchasing this canned salmon, Whitney, acting in its own name and for its own account, sold the 810 cases to

such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or mechandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid."

4. A document entitled "Report of Sale No. 408," issued by Whitney on July 5, 1956, records that Whitney sold the 810 cases to Nakat "For Account of American Packing Company," at a price of fifteen dollars per case less usual discounts for cash, swell, and label allowances, and "Less Brokerage 5%." However, the transaction as so recorded was never consummated.

Nakat for $14.50 per case less usual trade discounts for cash, swell, and label allowances.

Whitney asserts that the documents referred to above erroneously reflect that the disposition of the 810 cases was to be handled as a brokerage transaction, but that the transaction as finally consummated was not of that nature.

It is true that Whitney did not act as a broker in acquiring or disposing of the salmon, since it bought and sold for its own account.[5] But the cease and desist order in question is not. restricted to Whitney's brokerage activities. If, though Whitney sells for its own account, it grants anything of value as a purported commission or brokerage, or grants any compensation, allowance, or discount in lieu thereof in connection with a sale to one buying for his own account, the order is violated.[6]

Whitney sold the 810 cases to Nakat for $14.50 per case, less the usual discounts for cash, swell, and label allowances. The documents recording this sale make no mention of a commission or brokerage or any compensation, allowance, or discount in lieu thereof. But the lack of such a notation on these documents is not conclusive. The facts surrounding the entire transaction may establish, despite lack of corroboration in the selling documents, that a discount was granted in lieu of a purported commission or brokerage.

▪ An examination of the surrounding circumstances reveals that this was the case. When Nakat declined to pay fifteen dollars per case, Whitney's plan to act as a broker in the transaction failed. It could not reduce the price to Nakat by

giving Nakat part of Whitney's seventy-five-cent brokerage per case, as that. would have been a direct grant of a discount in lieu of commission or brokerage.. This was forbidden by the cease and desist order.

But in thereafter buying the salmon from American for fifteen dollars less. "5% brokerage," and selling it to Nakat for $14.50 a case, Whitney gave Nakat an indirect grant of a discount in lieu of a commission or brokerage. In effect, Whitney passed along to Nakat fifty cents of the seventy-five-cent discount Whitney had received from American in lieu of purported brokerage.

The course followed by Whitney was a transparent attempt to circumvent the cease and desist order here in question. If persons subject to such orders were enabled to escape their effect by following such a course, these orders would be largely ineffective and unenforceable. It was to preclude subterfuges of this kind that the order here in question expressly forbade indirect as well as direct discounts in lieu of a commission or brokerage to persons buying for their own account.

### Sale to Ivar Wendt.

On September 19, 1956, Whitney sold to Ivar Wendt, of Seattle, Washington, 8,000 cases of canned salmon. Wendt serves as a primary broker and also as a primary dealer in canned salmon.

The salmon was to be delivered and . paid for in 1,600 case lots. Under the terms of the purchase contract Whitney sold the salmon to Wendt at a price of $9.50 per case, less "Regular—5%, 1½%, ⅒%." The 1½% and ⅒%

---

5. As a matter of fact, the only document which purports to record the disposition of the salmon as a brokerage transaction is the "Report of Sale No. 408," referred to above. The invoices described above, while mentioning a 5% "brokerage," did not purport to record brokerage transactions because they noted outright sales by American to Whitney for the latter's own account. The document entitled "Account of Sale," described above, while mentioning a 5%

"commission," did not purport to record brokerage transactions because no buyer other than Whitney was named.

6. We speak of a "purported" commission or brokerage, since the "commission or brokerage" referred to in the cease and desist order and in section 2(c) of the act would not be a bona fide commission or brokerage. The person who receives such "commission or brokerage" is buying for his own account and renders no brokerage service.

discounts were the usual discounts for cash, swell, and label allowances. The "Regular—5%" discount is not further explained in this instrument. The invoice concerning the first 1,600 cases delivered under this contract notes the same price and usual discounts, "Less 5%." Invoices covering three subsequent lots of 1,600 cases each, however, use the notation "Less 5% Brokerage."

Whitney asserts that the references in these invoices to the discount as "brokerage" were the clerical errors of a bookkeeper. According to Whitney, these discounts were the customary 5% "functional" or "interpacker" discounts allowed to a primary dealer or distributor. Wendt was such a primary dealer and distributor in connection with this transaction, Whitney states.

Whitney also states that Wendt bought the 8,000 cases of salmon as a primary dealer or distributor for his own account and for resale to wholesale outlets and food chains in competition with other primary dealers and distributors. The salmon was thereafter sold by Wendt through field brokers to outlets of this kind.

None of the documents refers to the 5% discount to Wendt as an "interpacker" discount. On the contrary, it was three times noted as "brokerage." But even if the documents had referred to the allowance as an interpacker discount, this would not have been conclusive as to its true character. On the other hand, there is some reason to believe on this record that interpacker discounts are customary under circumstances such as this, and that this particular discount was intended as such.

█ Assuming this to be the case, we are unable to determine on this record whether such a discount should nevertheless be held to come within the purview of the cease and desist order. If it serves the same purpose, has the same effect, and enjoys no economic justification which entitles it to be distinguished, a so-called "interpacker" discount ought to be regarded as an allowance in lieu of a commission or brokerage—but not otherwise.

█ It is therefore our view that since the evidence is inconclusive on this branch of the case, a violation of the cease and desist order in connection with the Wendt transaction has not been proved.[7]

### Findings of Fact.

The court finds beyond a reasonable doubt that Whitney & Company is guilty of criminal contempt of this court in that, by buying 810 cases of canned salmon from American Packing Co. and selling the same to Nakat Packing Corporation in the manner and under the circumstances described above, Whitney & Company disobeyed the decree of this court entered herein on April 1, 1955, commanding Whitney & Company to comply with and obey the cease and desist order of the Federal Trade Commission entered on March 25, 1946, in its Docket No. 5279.

The court further finds that it has not been proved beyond a reasonable doubt that Whitney & Company is guilty of criminal contempt of this court with regard to the sale of 8,000 cases of canned salmon to Ivar Wendt in the manner and under the circumstances described above.

### Order.

It is Ordered by the court that:

1. In so far as the order to show cause charges criminal contempt in connection with the sale of 8,000 cases of canned salmon to Ivar Wendt, it is hereby discharged and dismissed with prejudice.

2. Whitney & Company is hereby adjudged guilty of criminal contempt of this court with regard to its purchase

---

**7.** In a criminal contempt proceeding a finding of guilt is not to be entered if there is a reasonable doubt. In re Michael, 3 Cir., 146 F.2d 627, 628, reversed on other grounds, 1945, 326 U.S. 224, 66 S.Ct. 78, 90 L.Ed. 30; Blim v. United States, 7 Cir., 68 F.2d 484, 487.

of 810 cases of canned salmon from American Packing Company, and its sale thereof to Nakat Packing Corporation.

3. Whitney & Company, by an authorized officer or attorney, shall appear before this court on the 18th day of January, 1960, at 9:30 a. m., for a hearing to determine the nature and extent of the punishment to be imposed, unless Whitney & Company in writing waives such appearance.

4. A certified copy of the foregoing opinion and findings of fact and of this order be served upon Whitney & Company, at its principal place of business, by the United States Marshal in Seattle, and that due return of such service be made.