**UNITED STATES of America,**

v.

**VULCANIZED RUBBER & PLASTICS COMPANY, Appellant.**

**No. 13336.**

United States Court of Appeals Third Circuit.

Argued Nov. 29, 1960.

Decided March 8, 1961.

Hastie, Circuit Judge, dissented.

W. Wilson White, Philadelphia, Pa. (Donald E. Van Koughnet, Washington, D. C., on the brief), for appellant.

Frank M. Whiting, Washington, D. C. (Walter E. Alessandroni, U. S. Atty., Mabel G. Turner, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for plaintiff-appellee.

Before McLAUGHLIN, HASTIE and FORMAN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal from a summary judgment of the District Court for the Eastern District of Pennsylvania, awarding the United States civil penalties in the amount of $6,000 against Vulcanized Rubber & Plastics Company under Section 5($l$) of the Federal Trade Commission Act as amended, 15 U.S.C.A. § 45($l$), for violation of a cease and desist order issued by the Federal Trade Commission.

The facts are not in dispute. The defendant is a manufacturer of combs. Prior to 1950, defendant manufactured all its combs by the sulphur vulcanizing method. Under this process rubber and sulphur are vulcanized under heat, resulting in a product recognized as "rubber" or "hard rubber" (hereafter both will be referred to as rubber). Until that time the defendant properly labeled its combs rubber. In 1950 defendant changed its manufacturing process to the injection mold type, which necessitated a change

in the type of compound used to Kralastic D, a patented material made by the United States Rubber Company which was composed of approximately 13% nitrile rubber, 85% hardening resin and small percentages of stabilizer and color. Notwithstanding this change, the defendant continued to label its combs rubber. A complaint was instituted by the Federal Trade Commission and after extended hearings,[1] the following Cease and Desist Order was entered:

"It Is Ordered that respondent, Vulcanized Rubber & Plastics Company, a corporation, and its officers, agents, representatives, and employees, directly or through any corporate or other device, in connection with the offering for sale, sale and distribution in commerce, as 'commerce' is defined in the Federal Trade Commission Act, of any combs designed for use on human hair, to forthwith *cease and desist from representing, directly or by implication*, by any advertisement, packaging, labeling, branding, stamping, or other marking or indication *that such combs are 'rubber' or 'hard rubber' or made of 'rubber' or 'hard rubber' unless such combs are in fact made of vulcanized hard rubber."* (Emphasis supplied).

A petition for review was then filed with the Court of Appeals for the District of Columbia. Vulcanized Rubber & Plastics Company v. Federal Trade Commission, 103 U.S.App.D.C. 384, 258 F.2d 684. Prior to action thereon by that court, the defendant filed a compliance report with the Commission stating that it would forthwith label its combs rubber-resin. The Commission rejected this. The defendant moved and was granted leave to amend its pending petition for review. This amendment informed the court of the Commission's interpretation and contended that it exceeded the bounds established by the complaint, findings and Order. In a per curiam opinion dismissing the petition for review, the court stated at 258 F.2d 685:

"We do not understand the order *as written* to be challenged, but only the Commission's subsequent interpretation of its order. However, this interpretation may be changed or it may never be enforced. We hold that there is no controversy calling for judicial review of the interpretation at the present time."

Subsequently, the defendant filed another compliance report with the Commission, still asserting the right to label its combs rubber-resin. The Commission rejected this and instituted the present action for violation of the Order and recovery of civil penalties. The district court on cross motions for summary judgment found for the plaintiff and fixed the penalty at $6,000.[2] This appeal followed.

---

1. The record of the hearings encompasses 3,720 pages, together with approximately 200 exhibits.

2. Since there was no issue of fact presented, the district court properly disposed of the case on summary judgment. We note, however, a prior case in the District Court for the District of New Jersey, United States v. Hindman, 1960, 179 F.Supp. 926, where the court held an issue of fact was presented in the following circumstances. An action was brought to recover civil penalties under Section 5(*l*) of the Federal Trade Commission Act, as amended, 15 U.S.C.A. § 45(*l*). Under the Commission's Order, the defendant was directed to "cease and desist from representing, directly or indirectly: * * * that the military clothing offered for sale or sold, or any of it is custom made * * *." Subsequently, the defendant changed his label to read "custom-tailored." The court held at page 928: "A jury trial will occur on the limited issue as to whether or not the label term 'custom-tailored' on defendant's uniforms *means to their purchasers* that they are 'custom-made'". (Emphasis supplied). The holding was erroneous, since the sole issue before the court was whether or not the labeling practice was within the proscription of the order and not whether the labeling practice was deceptive. United States v. Piuma, D.C.S.D.Cal.

The precise issue to be determined in this appeal is whether the defendant by labeling its combs rubber-resin violated the Commission's cease and desist Order. Federal Trade Commission v. Morton Salt Co., 1948, 334 U.S. 37, 54, 68 S.Ct. 822, 92 L.Ed. 1196.

Defendant's principal argument is that the labeling of its combs as being made of rubber-resin, does not fall within the scope of the Commission's Order. Necessarily defendant urges that the Order only prohibits it from labeling combs rubber, and that until there is a hearing by the Commission and a cease and desist order issued *specifically* prohibiting defendant from labeling its combs rubber-resin, an action for civil penalties cannot be maintained. We feel that the language of the order and the background of administrative hearings in this case completely refutes defendant's argument.

The Hearing Examiner found that the term rubber had a fixed and definite meaning. It was used to describe a distinct process whereby rubber and sulphur are vulcanized under heat. In the administrative proceeding, defendant contended that although the term rubber was recognized as being descriptive of those ingredients and that process, the term had acquired a secondary meaning broad enough to include defendant's product which did not contain sulphur, was not vulcanized and only contained a small percentage of nitrile rubber. The

Hearing Examiner disallowed this argument, and in his findings, which were adopted by the Commission, stated:

"The gist of this proceeding is whether or not the representations of respondent in its advertising and labeling or branding of combs that are made of Kralastic D as 'Hard Rubber' or 'Rubber' are false, misleading and deceptive. It is found that they are false, misleading and deceptive as these combs are not made or composed of rubber or hard rubber but are made or composed in large part of materials other than rubber or hard rubber and do not contain any sulphur and are not made by the vulcanization process but are admittedly made by the injection mold or extrusion process."

The final Order drafted in light of the entire record, was designed to eliminate defendant's labeling practice both presently and in the future. Additionally, the Order not only prohibited the specific direct representations that the combs were made of rubber, but also prohibited any representation which *"by implication"* so represented the product *"unless such combs are in fact made of vulcanized hard rubber."*[3] (Emphasis supplied). The labeling of the combs as being made of rubber-resin falls within this latter proscription of the Order. United States v. Piuma, D.C.S.D.Cal. 1941, 40 F.Supp. 119, affirmed sub nom, Piuma v. United States, 9 Cir., 1942, 126

1941, 40 F.Supp. 119, 122–123, affirmed sub nom Piuma v. United States, 9 Cir., 1942, 126 F.2d 601. Moreover, creating an issue of fact as the court did in Hindman, would usurp the function exclusively vested by Congress in the Federal Trade Commission to determine the issue of whether a labeling practice is misleading or deceptive to the public.

3. The scope of the Order prohibiting direct as well as implied representations that the combs were made of rubber, was warranted by the record and consonant with the legislative objects of the Federal Trade Commission Act.

"Orders of the Federal Trade Commission are not intended to impose criminal

punishment or exact compensatory damages for past acts, but to prevent illegal practices in the future. In carrying out this function the Commission is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past. *If the Commission is to attain the objectives Congress envisioned, it cannot be required to confine its road block to the narrow lane the transgressor has traveled; it must be allowed effectively to close all roads to the prohibited goal, so that its order may not be by-passed with impunity.*" (Emphasis supplied). Federal Trade Commission v. Ruberoid Co., 1951, 343 U.S. 470, 473, 72 S.Ct. 800, 803, 96 L.Ed. 1081.

F.2d 601; In re Whitney & Company, 9 Cir., 1959, 273 F.2d 211. It impliedly represents the combs to be made by a vulcanizing process which contains rubber and sulphur, when in fact the combs do not contain the ingredients nor are they produced by the process found by the Commission to be necessary to permit such labeling. Cf. Arrow Metal Products Corp. v. Federal Trade Comm., 3 Cir., 1957, 249 F.2d 83; Masland Duraleather Co. v. Federal Trade Commission, 3 Cir., 1929, 34 F.2d 733.

In the Piuma case supra, the defendant was ordered to cease and desist from, among other things, representing *directly* or *indirectly* that his product was "a gland tonic" [40 F.Supp. 120] and that it was "the best gland remedy known." After a purported compliance by the defendant, the government instituted an action to recover civil penalties to which the defendant interposed the defense, inter alia, that he had changed certain language in the representation. The court made short shrift of the argument stating at page 123 of 40 F.Supp.:

> "The substitution of 'gland tablet' for 'gland tonic' or 'one of the best gland remedies known' for 'the best gland remedy known' does not materially change the nature of the representations."

In re Whitney & Company, supra, [273 F.2d 212] *is another example of effective enforcement of a Commission cease and desist order.* The Order prohibited Whitney from:

> "Paying or granting, directly or indirectly, to any buyer, anything of value as a commission or brokerage, or any compensation, allowance or discount in lieu thereof, upon purchases made for such buyer's own account."

The Order was affirmed by the Circuit Court of Appeals and that court directed compliance. Subsequently, Whitney sought to circumvent the Order by buying salmon for its own account at a price which contained a brokerage fee deduction and then reselling the salmon at a price which allowed as a discount, part of Whitney's brokerage fees. In holding this transaction was "an indirect grant of a discount in lieu of a commission or brokerage" and therefore violated the Order, the court stated at page 214 of 273 F.2d:

> "The course followed by Whitney was a transparent attempt to circumvent the cease and desist order here in question. If persons subject to such orders were enabled to escape their effect by following such a course, these orders would be largely ineffective and unenforceable. *It was to preclude subterfuges of this kind that the order here in question expressly forbade indirect as well as direct discounts in lieu of a commission or brokerage to persons buying for their own account.*" (Emphasis supplied).

Such is the situation in the case at bar. The defendant has attempted by a colorable compliance with the Commission's Order to frustrate its mandate. The substitution of the compound word "rubber-resin" for "rubber" on a product which is not produced with the ingredients and by the process held by the Commission to be *the only recognized method to produce "rubber"* is as much a violation of the Order as if defendant had continued to label its combs "rubber".

The judgment of the district court will be affirmed.

HASTIE, Circuit Judge (dissenting).

A restatement of the course of the administrative and judicial proceedings in this controversy is necessary to make clear the basis of my disagreement with the majority opinion.

Pursuant to an appropriate complaint, a hearing examiner of the Federal Trade Commission conducted a lengthy inquiry addressed to the question whether defendant Vulcanized Rubber & Plastics Co. was deceiving the public by labeling combs of its manufacture as "rubber" or "hard rubber" when the combs were in fact made of a patented compound con-

taining 13% synthetic rubber, 85% resin and 2% coloring. The government's evidence indicated that the names "rubber" and "hard rubber" meant and connoted vulcanized hard rubber and nothing else. The compound used by defendant was described in its patent and in this proceeding as "rubber-resin". Indeed, in the report of the hearing examiner, whose findings were adopted by the Commission, the designation "rubber-resin" is used twice to describe the material of defendant's combs. There was not even an intimation in the record that such a designation was either inaccurate or deceptive. It was solely the use of the labels "rubber" and "hard rubber" which was challenged as misleading. Concluding that such designation would mislead the public, the Commission ordered the defendant to cease and desist "from representing, directly or by implication * * * that such combs are 'rubber' or 'hard rubber' or made of 'rubber' or 'hard rubber' unless such combs are of fact made of vulcanized hard rubber".

In the light of the matter actually litigated and the recognition by the hearing examiner that defendant's combs were in fact "rubber-resin", it is significant that in the Commission's order the words "rubber" and "hard rubber" are placed within quotation marks. This is an additional indication that the proceeding was solely concerned with and directed at the use of the designations "rubber" and "hard rubber".

Such being the circumstances and the apparent coverage of the Commission's cease and desist order, the defendant, after receiving the order, apprised the Commission that it was complying with its mandate by designating and describing its combs as "rubber-resin". The Commission replied that it rejected this report and considered the designation "rubber-resin" a violation of its order.

The defendant then sought a judicial ruling on this controversy by filing its petition to review the cease and desist order.[1] In issue were the scope and effect of the order and whether the restraint it imposed was warranted by the complaint and record before the Commission. After hearing, the court filed a per curiam decision dismissing the appeal. Vulcanized Rubber & Plastics Co. v. Federal Trade Commission, 1958, 103 U.S.App.D.C. 384, 258 F.2d 684. In so doing it distinguished the Commission's "interpretation" from the order "as written", stated that defendant's quarrel was with the former rather than the latter, and refused to adjudicate that controversy. Analytically, this unusual ruling must have been based upon an intermediate conclusion that the order "as written" did not make illegal the use of the designation "rubber-resin" for the defendant's combs. For obviously, if it did, the petition challenged the order "as written".

Thereafter, the Commission brought the present action in the Eastern District of Pennsylvania for civil penalties and obtained a decision that defendant's use of "rubber-resin" violates the very order which the District of Columbia Court of Appeals had examined and found not even to have been challenged in the controversy over the use of "rubber-resin".

Thus, the defendant is now in this position. It is held to have violated an order by using a label—"rubber-resin" —which under the ruling of the District of Columbia court was not forbidden by the order as written. Moreover, the defendant, which never had an opportunity before the Commission or on direct appeal from its order to have a hearing on the question whether the description "rubber-resin" suggests some vulcanized hard rubber content or is otherwise de-

1. The amended petition for review alleged that the Commission's cease and desist "order is arbitrary and capricious in that it prohibits petitioner from representing that combs sold and distributed by it * * * are 'rubber-resin' when such is the fact." Opposing that position, the Commission did not dispute the alleged coverage of the order, but rather defended the prohibition of the designation "rubber-resin" as proper.

ceptive, cannot have that issue litigated now because this is a collateral proceeding in which merely the meaning of the order, rather than its justification on the administrative record, can be litigated.

Administrative and judicial processes should not combine to impose such a dilemma upon a party. I see no way to solve this problem fairly except to hold that the ruling of the court below was inconsistent with the decision of the Court of Appeals for the District of Columbia and, therefore, precluded by it. This would make it necessary for the Commission to challenge the defendant's use of "rubber-resin" as deceptive in a new administrative proceeding, thus affording the defendant for the first time an opportunity to contest that issue.

Accordingly, I would reverse the decision of the District Court.