**WESTERN FRUIT GROWERS SALES CO., Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

No. 18344.

United States Court of Appeals
Ninth Circuit.
Aug. 20, 1963.

James M. Dale, Beverly Hills, Cal., for petitioner.

James McI. Henderson, Gen. Counsel, J. B. Truly, Asst. Gen. Counsel, E. K. Elkins, and J. Lane Morthland, Attys., F. T. C., Washington, D. C., for respondent.

Before BARNES, HAMLIN and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge.

The Federal Trade Commission, respondent herein, issued a complaint charging Western Fruit Growers Sales Company, hereinafter petitioner, with paying, granting or allowing to certain buyers and brokers purchasing for their own account, brokerage or allowances in lieu thereof in violation of section 2(c) of the Clayton Act, as amended by the Robinson-Patman Act (15 U.S.C. § 13 (c)). After a hearing, the hearing officer rendered a decision that petitioner had violated the Act. The respondent adopted the hearing officer's decision and issued a cease and desist order against petitioner. Petitioner now petitions this court for a review of the Commission's order. This court has jurisdiction to review the order under the provisions of section 11 of the Clayton Act (15 U.S.C. § 21(c)).

Petitioner, a corporation doing business in California with its principal place of business at Fullerton, California, has

for several years been engaged in the business of packing, selling and distributing fruit. It acts as a consignment shipper for some twenty-two packing houses in California and Arizona, and sells and distributes its fruit through brokers to wholesalers, jobbers and commission merchants, as well as direct to customers located in many parts of the United States.

■ The evidence before the Commission related to a number of transactions which were said to be representative of a much larger number of transactions in which petitioner had sold, shipped and invoiced substantial quantities of fruit to certain firms and had paid to those firms brokerage fees or commissions. Under section 2(c) of the Clayton Act,[1] a seller may not pay a buyer brokerage on the latter's purchases for his own account or for the account of another; the motive and good faith of the seller are immaterial to a violation of this section.[2] The Commission concluded on the evidence presented that petitioner had violated section 2(c).

The principal issue before the hearing officer was whether a seller-buyer relationship existed between petitioner and the recipients of the brokerage in the representative sales transactions shown by the record.[3] If such a relationship did exist, petitioner violated section 2(c). The hearing officer's finding that such sales were made, adopted by the Commission, is conclusive "if supported by substantial evidence" (15 U.S.C. § 21(c)) in the record.[4]

We hold that the findings of the respondent are supported by substantial evidence in the record and that respondent properly issued a cease and desist order. That sales were made to the brokers in the representative transactions was evidenced by the following: the goods were invoiced directly to the brokers; counsel for petitioner at the time of the trial admitted that when the goods were shipped it was considered a completed transaction; petitioner lost control of the goods after they were shipped, e. g., it did not know what the brokers' reselling prices were, the broker did not account to Western for the price the broker received upon resale of the goods, the name of the customer to whom the broker resold the goods was not known by peti-

1. Section 2(c) of the Clayton Act provides: "That it shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid." 49 Stat. 1527; 15 U.S.C. § 13 (c).

2. See, e. g., Modern Marketing Service, Inc. v. F. T. C., 149 F.2d 970 (7th Cir., 1945).

3. Petitioner contests certain findings made by the hearing officer concerning "discriminatory discounts." The Commission, however, qualified its adoption of the hearing officer's findings, by the following language: "(the Commission specifically not relying on the evidence referred to on pages 7–8 of the initial decision relating to volume discounts granted to large direct buyers by respondent.)" In its brief, the Commission states that it intended and regards the quoted language as a rejection of those findings and as having the same effect as though it had entered a formal order striking from the decision the paragraph in which they were set forth.

4. Petitioner contends that all of the findings relate to the conduct of the brokers and not to that of petitioner. This contention is without merit. The hearing officer specifically found that all of the material allegations of the complaint had been proved, one of which was that petitioner had made sales to its "brokers and direct buyers purchasing in their own name and for their own account for resale" upon which brokerage was paid. The hearing officer also discussed specific sales made by petitioner in violation of section 2(c).

tioner in some instances, the broker did not bill petitioner for any loss incurred by the broker when goods were sold by him at a lower price than that invoiced to him, and once a month the broker billed petitioner for the brokerage on fruit, basing the brokerage fee on petitioner's invoice price to the broker.[5]

Petitioner contends that assuming that a cease and desist order should have been issued, the order issued by the Commission was too broad. We hold that petitioner's contention is without merit. The Commission's order provided:

"It Is Ordered that respondent Western Fruit Growers Sales Co., a corporation, and its officers, agents, representatives and employees, directly or through any corporate or other device, in connection with the sale of citrus fruit or any other food products in commerce, as 'commerce' is defined in the Clayton Act, do forthwith cease and desist from:

"Paying, granting, or allowing directly or indirectly, to any buyer, or to anyone acting for or in behalf of or who is subject to the direct or indirect control of such buyer, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, upon or in connection with any sale of citrus fruits or any other food products, to such buyer for his own account."

The Supreme Court has recognized that the Commission has wide discretion to formulate a remedy adequate to prevent repetitions of a violation that has been committed.[6] An agency "is not limited to prohibiting 'the illegal practice in the precise form' existing in the past" and "may fashion its relief to restrain 'other like or related unlawful acts'." [7] Section 2(c) is narrowly drawn to condemn the practice of exchanging brokerage between buyer and seller, whether the exchange be by an open payment or disguised as a discount or allowance. We feel that the order quoted above does no more than prohibit the practices found to exist in this case and closely related acts, all of which are expressly prohibited by section 2(c). The appropriateness of an order necessarily depends upon the facts of the particular case and we merely hold here that the order quoted above was sufficiently tailored to the circumstances of this case to preclude its modification by this court.[8]

---

5. While these facts were generally conceded by petitioner, it contended that the fruit market was extremely competitive, that its margin of profit was low, and that it could not afford to deal directly with the buyers of small quantities of fruit; therefore, when several small customers were each to receive portions of a single carload of fruit, the broker as a matter of convenience was billed rather than the various small purchasers. As noted earlier, however, motive and intent are immaterial to a violation of section 2(c), if a sale upon which brokerage is paid has in fact been made. Mr. Frees, petitioner's general manager and the only witness to testify, did state that the transactions were not intended by the parties to be sales, but the credibility of his testimony was a matter for the determination of the hearing officer. Further, although it is not our function to weigh the evidence, it is certainly questionable whether much weight could be given Mr. Frees' statement in the light

of the undisputed evidence outlined in the text above.

6. See Jacob Siegel Co. v. Federal Trade Commission, 327 U.S. 608, 611–612, 66 S. Ct. 758, 90 L.Ed. 888.

7. See Federal Trade Commission v. Mandel Bros., Inc., 359 U.S. 385, 392–393, 79 S.Ct. 818, 824, 3 L.Ed.2d 893 (1959).

8. Petitioner cites Federal Trade Commission v. Henry Broch & Co., 368 U.S. 360, 82 S.Ct. 431, 7 L.Ed.2d 353 (1962) in support of its position that the order is too broad. In that case, the Court of Appeals for the Seventh Circuit had modified the Commission's order by striking out all references to "any other seller principal" and to "any other buyer," thus confining the order to future sales between the parties to the transaction which was found violative of section 2(c). The Supreme Court reversed the Court of Appeals, holding that the Commission

Petitioner's contention that the Commission cannot make its order binding upon unnamed officers, agents, representatives and employees of petitioner is similarly without merit.[9]

It is hereby ordered that the order of the Commission in this case be obeyed by petitioner.

had wide discretion to formulate a remedy adequate to prevent repetitions of the violation and could properly ban repetitions in connection with transactions involving "any" seller or buyer. With the exception that it contained the phrase "in any other manner," paragraph 2 of the Commission's order in that case contained language similar to that used in the order of the Commission in the present case. The Supreme Court stated the following concerning paragraph 2:

"We do not wish to be understood, however, as holding that the generalized language of paragraph (2) would necessarily withstand scrutiny under the 1959 amendments."

The Court, although raising a question concerning the language used, did not hold it to be insufficient; nor did the Court point out in what respect the language might be considered inappropriate. It could be that the language "in any other manner," which is extremely broad, was the target of the Court's comment.

9. See Mandel Bros., Inc. v. Federal Trade Commission, 254 F.2d 18, 22 (7th Cir., 1958), rev'd on other grounds, 359 U.S. 385, 79 S.Ct. 818, 3 L.Ed.2d 893 (1959).