EMPIRE RAYON YARN CO., Inc., Plaintiff,

v.

AMERICAN VISCOSE CORPORATION et al., Defendants.

United States District Court
S. D. New York.
Jan. 6, 1965.

Sweet, Reinitz, Peskin & Sweet, New York City, (Jacob Greenwald, New York City, of counsel), for plaintiff.

Jackson, Nash, Brophy, Barringer & Brooks, New York City (Raymond A. Tierney, New York City, of counsel), for defendant American Viscose Corp.

MURPHY, District Judge.

We have for resolution cross motions for summary judgment in an action for treble damages brought under the Robinson-Patman Act alleging violations of § 2(c), (d) and (e), 15 U.S.C. § 13(c)–(e).

Defendant American Viscose Corporation (American), a major producer, is one of several companies engaged in the manufacture of first quality viscose rayon yarn, the bulk of which it sells directly to the textile trade where it is converted or processed. Defendants Malina Company (Malina) and Shawmut Inc. (Shawmut), as is plaintiff (Empire), are processors.[1] With respect to a small portion of its output American sells to what we may here call jobbers, who sell to and service smaller units of the textile trade. By separate written agreements with American, Malina (since 1949) and Shawmut (since 1953) also serve as jobbers, in return for which they receive a 5% discount upon the submission by them to American of proof that they have resold the yarn in its original condition at American's list price, i. e., the same price at which they purchased it from American.[2] American has the same agreement (since 1949) with Gutner Brothers (Gutner). Gutner is not a processor. It is a jobber only and only of American's product, while Malina and Shawmut also function as jobbers for other manufacturers.[3] Plaintiff Empire also performs the dual function of processor and jobber, although not for American, which is the root of the controversy.

Empire, apparently in 1956, sought to enter an agreement with American such as exists with Malina, Shawmut and Gutner, and American declined.[4] Em-

---

1. Shawmut has apparently since retired from the yarn business (according to affidavit submitted in support of plaintiff's cross-motion) and the action against it discontinued.

2. Note 9, infra.

3. These facts, i. e., who does what for whom, are not entirely consistent with the facts as recited in a prior motion for summary judgment. Empire Rayon Yarn Co. v. American Viscose Corp., 160 F.Supp. 334, 335 (S.D.N.Y.1958).

4. In 1953 Empire made like requests of E. I. duPont Nemours and American Enka Corporation, and was, similarly rebuffed, although such an arrangement was made with Enka in 1958. Empire did not discontinue its purchases from these two companies during the period following the refusal by them to employ Empire as a jobber, although it did cease to purchase from American after the refusal.

pire then brought this action against American, Malina, Shawmut and Gutner. Initially the plaintiff also alleged a violation of § 2(a), 15 U.S.C. § 13(a). In 1958 cross motions for summary judgment were denied, Judge Weinfeld holding that factual questions existed with regard to (1) whether Empire purchased the yarn from American for processing or for resale in competition with the other jobber defendants; (2) whether the jobber defendants performed services different from those of Empire and were thus entitled to a discount; (3) whether American's classification of its customers into jobbers and processors was reasonably based, and; (4) whether the jobber defendants had knowingly received discriminatory discounts. Empire Rayon Yarn Co. v. American Viscose Corp., 160 F.Supp. 334 (S.D.N.Y.1958).

In the ensuing five years there have been extensive discovery proceedings, a stipulation of facts and Empire has voluntarily abandoned all claims under § 2(a). The defendants now urge that A) § 2(c) is totally inapplicable to the factual situation here presented; B) plaintiff has failed to state any valid claims under §§ 2(c), 2(d) and 2(e); C) plaintiff has no standing to sue since it receives a like discount from another manufacturer and thus cannot recover a discount from American which it claims to be unlawful, and; D) in the alternative, plaintiff's claims for damages must be confined solely to the first quality viscose rayon yarn which it purchased from American and resold in its original form. Plaintiff cross moves for summary judgment on each cause of action and seeks an injunction and damages allegedly sustained as a result of defendants' discriminatory conduct, trebled, and not limited to its purchases from American.

5. 15 U.S.C. § 13(a).

6. 15 U.S.C. § 13(d).

7. 15 U.S.C. § 13(e).

## I. Section 2(c).

As stated by the Supreme Court in FTC v. Henry Broch & Co., 363 U.S. 166, 168, 80 S.Ct. 1158, 1160, 4 L.Ed.2d 1124 (1960), "the Robinson-Patman Act was enacted in 1936 to curb and prohibit all devices by which large buyers gained discriminatory preferences over smaller ones." The Act proscribes, along with direct price discriminations,[5] and discriminatory allowances [6] and services [7] what is popularly termed "dummy brokerage" in the following language:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to pay or grant, or to receive or accept, anything of value as a commission, brokerage, or other compensation, or any allowance or discount in lieu thereof, except for services rendered in connection with the sale or purchase of goods, wares, or merchandise, either to the other party to such transaction or to an agent, representative, or other intermediary therein where such intermediary is acting in fact for or in behalf, or is subject to the direct or indirect control, of any party to such transaction other than the person by whom such compensation is so granted or paid." 15 U.S.C. § 13 (c).

This section, 2(c) of the Act, was designed not to affect legitimate brokerage [8] but "to cover * * * all * * * means by which brokerage could be used to effect price discrimination." FTC v. Broch, supra, at 169, 80 S.Ct. at 1161. Thus, a purchaser may not receive a price reduction by having the seller pay brokerage to the purchaser's agent. Biddle Purchasing Co. v. FTC, 96 F.2d 687 (2d Cir. 1938), cert. denied, 305 U.S. 634, 59 S.Ct. 101, 83 L.Ed. 407 (1938);

8. "[T]his subsection permits the payment of compensation by a seller to his broker or agent for services actually rendered in his behalf. * * *" Report of Conference Committee, H.R.Rep. No. 2951, 74th Cong., 2d Sess. 7 (1936).

Oliver Bros. v. FTC, 102 F.2d 763 (4th Cir. 1939). Nor may the purchaser receive a discount directly and claim it as an amount represented by saved broker's fees, since it would then in effect represent a proscribed allowance or discount in lieu of brokerage. Great Atlantic & Pacific Tea Co. v. FTC, 106 F.2d 667 (3d Cir. 1939), cert. denied, 308 U.S. 625, 60 S.Ct. 380, 84 L.Ed. 521 (1940).

The problem presented by the instant motions is whether the jobber defendants fit into a scheme violative of § 2(c). The parties have stipulated that persons who resell viscose rayon yarn in the original form are jobbers. American calls them jobbers, although it also confusingly refers to them as "jobber-brokers" and "purchasers," and seeks to cast them in the light of true brokers. Yet they do actually *buy* the yarn. Empire calls them "purchasers" who receive a discount in the nature of brokerage, and seeks to mold them in the image of buyers who receive brokerage or an allowance in lieu thereof directly from the seller, American. Yet they do *buy* and *resell* only at American's list price[9] and get the discount upon proof of compliance with the agreement. American, in its brief, states that it entered the arrangement with the jobber defendants because "it has found it more economic and convenient to sell to jobbers who sell and service smaller units of the textile trade at lower selling costs than would be the case if American sold directly." American disputes Empire's Rule 9(g)[10] statements that the discount was not for services rendered and that it was brokerage.

If the jobber defendants were true brokers, i. e., those who bring buyer and seller together for a commission without themselves taking title to the merchandise, there would be no problem. Should such a broker be treated differently because he takes title between the passage from the seller to the consumer? What it comes down to, we think, is whether one who is not in fact a broker by *occupation* may receive brokerage or a discount when he performs the function of a broker, and the further question, may a buyer ever perform services for his seller.

We do not agree with those authorities[11] who feel that decisional law has made the "for services rendered" exception of § 2(c) a dead letter as it applies to buyers. The cases principally relied upon for the conclusion had to do with the receipt of brokerage by the buyer's agents, Biddle Purchasing Co. v. FTC, supra; Oliver Bros. v. FTC, supra; Webb-Crawford Co. v. FTC, 109 F.2d 268 (5th Cir. 1940), cert. denied, 310 U.S. 638, 60 S.Ct. 1080, 84 L.Ed. 1406 (1940), or by the buyer directly in lieu either of illicit brokerage previously paid to its agents, Great Atlantic & Pacific Tea Co. v. FTC, supra, or as a straight discount sought to be justified on the basis of services rendered not for the seller, but for the buyer, Southgate Brokerage Co. v. FTC, 150 F.2d 607 (4th Cir. 1945), cert. denied, 326 U.S. 774, 66 S.Ct. 230, 90 L.Ed. 468 (1945). The Webb-Crawford case did actually read "except for services rendered" out of the section as regards buyers, but that case does not tell us what services the receiver of the brokerage rendered or claimed were rendered. There is, to be sure, a prohibition on discounts given to a buying broker, but this occurs where the broker-buyer gets the discount on purchases he makes for his own account

9. Plaintiff, in its Rule 9(g) statement alleges that the jobber defendants resell at those list prices in effect at the time of resale. Plaintiff fills in the intimation in its brief, stating that the list price may go up or down and thus the jobber defendants can get their full economic return through mark-up on resale and at the same time get false brokerage. Defendants deny this allegation. There are no facts to support plaintiff's charge.

10. General Rules of United States District Courts for the Southern and Eastern Districts of New York.

11. E. g., Rowe, Price Discrimination Under the Robinson-Patman Act 350 (1962); Att'y Gen. Nat'l Comm. Antitrust Rep. 188 (1955).

and later resells at whatever the market will bear. Southgate Brokerage Co. v. FTC, supra; Western Fruit Growers Sales Co. v. FTC., 322 F.2d 67 (9th Cir. 1963); In re Whitney & Co., 273 F.2d 211 (9th Cir. 1959). In Broch, where § 2(c) was violated when the seller's broker cut his commission to effect a particular sale to a buyer at a price below the seller's quoted figure, the Supreme Court said:

"There is no evidence that the buyer rendered any services to the seller or to the respondent nor that anything in its method of dealing justified its getting a discriminatory price by means of a reduced brokerage charge. *We would have quite a different case if there were such evidence and we need not explore the applicability of § 2(c) to such circumstances.* [Emphasis added.]"
363 U.S. at 173, 80 S.Ct. at 1163.

and so expressly declined to rule out the possibility that a buyer might render services to the seller sufficient to justify a discount.

In the instant case, viewing the jobber defendants as buyers, such services are rendered. They resell at American's list price. Viewed another way, they bring buyer and seller together for a commission and the fact that they take title in the interim does not detract from the value of this service. Empire is a disappointed jobber. Its allegations amount to a claim that it is the victim of a price discrimination in that, in effect, American would charge it more for the yarn it would resell than is charged the jobber defendants. In addition, since the device used is in the nature of brokerage and the jobber defendants are also buyers the claim should be governed by § 2(c). In this way plaintiff attempts to force itself on American as a jobber and to avoid the defensive provisos of § 2(a) and the need for showing competitive injury required by that section, which

are inapplicable under § 2(c). FTC v. Simplicity Pattern Co., 360 U.S. 55, 64–67, 79 S.Ct. 1005, 3 L.Ed.2d 1079 (1959); But see FTC v. Broch & Co., supra. True, conduct permitted by § 2(a) may still be violative of § 2(c), FTC v. Broch & Co., supra, 363 U.S. at 171, 80 S.Ct. 1158, and there is an overlap and certain activities may be proscribed by both sections. Cf. United Cigar-Whelan v. H. Weinrich Co., 107 F.Supp. 89 (S.D.N.Y. 1952). But where, as here, the allegations of fact [12] relate only to a § 2(c) violation, we will not read in the possibility that the venture complained of may also amount to a § 2(a) price discrimination, or that it might in reality result from a scheme which is non-violative of § 2(a) only because of the absence of some requirement not relevant to § 2(c).

Accordingly, defendants' motion for summary judgment on this cause of action is granted.

### II. The Claims Under §§ 2(d) and 2(e).

■■ Section 2(d) of the Robinson-Patman Act prohibits *payments* to one's customer as compensation for services or facilities furnished by the customer in connection with his resale of the merchandise unless the payments are available on proportionately equal terms to all customers competing in the resale. Section 2(e) makes it unlawful to discriminate in favor of one purchaser with regard to goods bought for resale by furnishing any *services of facilities* in connection with the resale not made available to all purchasers on proportionately equal terms.

It is clear that these sections are inapplicable. American furnishes no services or facilities to the jobber defendants. American pays no money as compensation for services or facilities furnished by the jobber defendants. Empire's claim under § 2(e) that the giving of the discount is a service is specious,.

---

12. Empire does not deny that the jobber defendants do what they do, but contends that what they do does not amount to services for the seller since a buyer can't perform services for a seller.

as is its contention under § 2(d) that the discount represents a payment for services—the services being maintenance of an inventory, warehousing, etc., as alleged by the defendants in their answers. Essentially what the defendants say is that the jobbers resell at seller's list and make their profit on the discount. This is not a service covered by §§ 2(d) and 2(e), the promotion allowance sections.

Since on the agreed statement of facts there is no violation of §§ 2(c), (d) and (e) defendants' motion for summary judgment is granted and plaintiff's motion denied.

These are orders. No settlements are necessary.