## FEDERAL TRADE COMMISSION *v.* MANDEL BROTHERS, INC.

No. 234.   Argued March 23, 1959.—Decided May 4, 1959.

*Daniel M. Friedman* argued the cause for petitioner. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Hansen, Earl W. Kintner, James E. Corkey* and *Alvin L. Berman.*

*Samuel H. Horne* argued the cause for respondent. With him on the brief was *Anderson A. Owen.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner issued a complaint charging respondent, a retail department store, with violations of the Fur Products Labeling Act, 65 Stat. 175, 15 U. S. C. § 69.

Violations were found and a cease-and-desist order was issued. One of the principal violations found was that many of respondent's retail sales were falsely "invoiced" in violation of § 3 of the Act.[1] The term "invoice" is defined in § 2 (f) as "a written account, memorandum, list, or catalog, which is issued in connection with any commercial dealing in fur products or furs, and describes the particulars of any fur products or furs, transported or delivered to a purchaser, consignee, factor, bailee, correspondent, or agent, or any other person who is engaged in dealing commercially in fur products or furs." Section 5 (b) provides that a fur product or fur is falsely "invoiced" if it is not "invoiced" to show (a) the name of the animal that produced the fur; and, where applicable, that the product (b) contains used fur, (c) contains bleached, dyed, or otherwise artificially colored fur, (d) is composed in whole or substantial part of paws, tails, bellies, or waste fur; (e) the name and address of the person issuing the "invoice"; and (f) the country of origin of any imported furs.

---

[1] Section 3 provides in part:

"(a) The introduction, or manufacture for introduction, into commerce, or the sale, advertising or offering for sale in commerce, or the transportation or distribution in commerce, of any fur product which is misbranded or falsely or deceptively advertised or invoiced, within the meaning of this Act or the rules and regulations prescribed under section 8 (b), is unlawful and shall be an unfair method of competition, and an unfair and deceptive act or practice, in commerce under the Federal Trade Commission Act.

"(b) The manufacture for sale, sale, advertising, offering for sale, transportation or distribution, of any fur product which is made in whole or in part of fur which has been shipped and received in commerce, and which is misbranded or falsely or deceptively advertised or invoiced, within the meaning of this Act or the rules and regulations prescribed under section 8 (b), is unlawful and shall be an unfair method of competition, and an unfair and deceptive act or practice, in commerce under the Federal Trade Commission Act."

The Commission found that respondent had violated the "invoice" provisions of the Act by failure to include in many of its retail sales slips of fur products, (a) its address, (b) whether the fur was bleached, dyed, or otherwise artificially colored, and (c) the correct name of the animal producing the fur.

The Act in § 4 also provides [2] that a fur product is misbranded (1) if it is "falsely or deceptively labeled . . . or identified," (2) if there is not affixed a label setting forth substantially the same six items of information required

[2] Section 4 provides:

"For the purposes of this Act, a fur product shall be considered to be misbranded—

"(1) if it is falsely or deceptively labeled or otherwise falsely or deceptively identified, or if the label contains any form of misrepresentation or deception, directly or by implication, with respect to such fur product;

"(2) if there is not affixed to the fur product a label showing in words and figures plainly legible—

"(A) the name or names (as set forth in the Fur Products Name Guide) of the animal or animals that produced the fur, and such qualifying statement as may be required pursuant to section 7 (c) of this Act;

"(B) that the fur product contains or is composed of used fur, when such is the fact;

"(C) that the fur product contains or is composed of bleached, dyed, or otherwise artificially colored fur, when such is the fact;

"(D) that the fur product is composed in whole or in substantial part of paws, tails, bellies, or waste fur, when such is the fact;

"(E) the name, or other identification issued and registered by the Commission, of one or more of the persons who manufacture such fur product for introduction into commerce, introduce it into commerce, sell it in commerce, advertise or offer it for sale in commerce, or transport or distribute it in commerce;

"(F) the name of the country of origin of any imported furs used in the fur product;

"(3) if the label required by paragraph (2) (A) of this section sets forth the name or names of any animal or animals other than the name or names provided for in such paragraph."

for an "invoice," or (3) if the label designates the animal that produced the fur by some name other than that prescribed in the Fur Products Name Guide.[3]  The Commission found that the labels on respondent's fur products were false in numerous instances by reason of the failure to include information in three of the categories listed under the second part of § 4.  It held, however, that there was no evidence that the labels were deficient in the other three categories of information.  Nevertheless, it issued a cease-and-desist order against misbranding by failure to include in the labels the required six categories of information, all of which were listed.

On appeal, the Court of Appeals *first* eliminated the prohibitions relating to invoicing on the ground that a retail sales slip was not an "invoice" within the meaning of the Act; and *second,* it struck from the order the prohibition against misbranding through omission of the three categories as to which no violations were found. 254 F. 2d 18.  The case is here on a petition for a writ of certiorari.  358 U. S. 812.

## I.

First, as to invoicing.  We start with an Act whose avowed purpose, *inter alia,* was to protect "consumers . . . against deception . . . . resulting from the misbranding, false or deceptive advertising, or false invoicing of fur products and furs."  S. Rep. No. 78, 82d Cong., 1st Sess., p. 1.  The House Report also emphasizes that the bill was "designed to protect consumers and others from widespread abuses" arising out of false and misleading matter in advertisements and otherwise.  H. R. Rep. No. 546, 82d Cong., 1st Sess., p. 1.  The Title of the Act (which, though not limiting the plain meaning of the text, is none-

---

[3] This is a register of the names of hair, fleece, and fur-bearing animals which § 7 of the Act requires the Commission to maintain.

theless a useful aid in resolving an ambiguity (see *Maguire* v. *Commissioner*, 313 U. S. 1, 9)), states that its purpose was to "protect consumers and others against . . . false invoicing of fur products and furs." 65 Stat. 175. So we have an avowed purpose to protect retail purchasers against improper "invoicing." We therefore should read § 2 (f) which contains the definition of "invoice" hospitably with that end in view. Section 2 (f) is not unambiguous. Yet we do not have here the problem of a penal statute that deserves strict construction. We deal with remedial legislation of a regulatory nature where our task is to fit, if possible, all parts into an harmonious whole. *Black* v. *Magnolia Liquor Co.*, 355 U. S. 24, 26.

Section 2 (f) uses "invoice" to include a "written account" and "memorandum." So far a retail sales slip is included. Section 2 (f) requires the "invoice" to be issued "in connection with any commercial dealing" in furs. A retail sale is plainly a "commercial dealing." Section 2 (f) requires the invoice to be issued to a "purchaser." There again a customer of a retailer is a "purchaser." The case for inclusion of a retail sales slip in "invoice," as that term is used in the Act, would therefore seem to be complete. What turned the Court of Appeals the other way was the last phrase in § 2 (f)—"or any other person who is engaged in dealing commercially in fur products or furs." It held that "engaged in dealing commercially" modifies not only "any other person" but also all the other preceding terms in the subsection including "purchaser." Cf. *United States* v. *Standard Brewery*, 251 U. S. 210, 218. That is a possible construction. We conclude, however, that this limiting clause is to be applied only to the last antecedent.[4] We think it would

---

[4] Cf. *United States* v. *Hughes*, 116 F. 2d 613, 616; *Puget Sound Electric R. Co.* v. *Benson*, 253 F. 710, 711; 2 Sutherland, Statutory Construction (3d ed. 1943), § 4921.

be a partial mutilation of this Act to construe it so that the "invoice" provisions were inapplicable to retail sales. In the first place, the language of § 2 (f) specifies in sweeping language the categories of persons for whose benefit the invoicing requirements were imposed, *viz.*, purchaser, consignee, factor, bailee, correspondent, or agent. Then as a general catch-all "any other person who is engaged in dealing commercially in fur products or furs" was added. In the second place, only by construing "invoice" to include retail sales slips can the full protection of the Act be accorded consumers. We do not agree with the point stressed by respondent that the consumer's protection is to be found solely in the label on the fur product and that invoices are required only at each antecedent step of delivery or transfer to a person dealing commercially in either furs or fur products. The advertising and mislabeling prohibitions in § 3 (b) of the Act [5] are plainly applicable to retail sales. Yet the prohibition of false invoices is contained in the same clause. If we held that Congress, in spite of its desire to protect consumers, withheld from them the benefits of reliable invoices, we would have to read the clauses of § 3 distributively, making only some of them applicable to retail sales. That would be a refashioning of § 3, an undertaking more consonant with the task of a congressional committee than with judicial construction.

Moreover, fur product "labels," we are advised, are not pieces of cloth sewn into garments but tags which the purchaser is likely to throw away after the purchase. The "invoice" is the only permanent record of the transaction that the retail purchaser has. Its importance was emphasized by the Commission:

"Inasmuch as the invoice may serve as a documentary link connecting the sale of specific fur

---

[5] Note 1, *supra*.

products back through the retailer's records with advertisements therefor, the application of the invoicing provisions of the Act to transactions between retailers and consumers represents a key implement for effective administration of the Act."

The inclusion of retail sales slips in invoices has been the consistent administrative construction of the Act.[6] This contemporaneous construction is entitled to great weight (*United States* v. *American Trucking Assns.*, 310 U. S. 534, 549; *Black* v. *Magnolia Liquor Co.*, *supra*; *Federal Housing Adm'n* v. *Darlington, Inc.*, 358 U. S. 84, 90) even though it was applied in cases settled by consent rather than in litigation.

Finally respondent urges that a retailer's sale is a local transaction not subject to the exercise by Congress of the commerce power. Misbranding a drug held for sale after shipment in interstate commerce was held to be within the commerce power in *United States* v. *Sullivan*, 332 U. S. 689. That decision and its predecessors sanction what is done here.

We conclude that a retail sales slip is an "invoice" within the meaning of the Act and accordingly the judgment of the Court of Appeals setting aside the part of the cease-and-desist order which requires this retailer to give a proper "invoice" to each purchaser is reversed.

## II.

Second, as to false labeling. The Commission, as we have noted, found that respondent had committed numerous violations of three of the six disclosure requirements

[6] See *Ed Hamilton Furs, Inc.*, 51 F. T. C. 186. We are advised that since that case, decided in 1954, the Commission has issued 137 complaints charging violations of the Act involving false and deceptive retail invoicing. There are presently outstanding 110 cease-and-desist orders relating to retail invoicing. In 92 other cases furriers have agreed to discontinue false and deceptive retail invoicing.

contained in § 4 (2) of the Act,[7] noting that there was no evidence that it had not complied with the other three disclosure requirements of § 4 (2). The cease-and-desist order of the Commission was however directed against "misbranding fur products by: 1. Failing to affix labels to fur products showing" each of the six categories of information required by § 4 (2). The Court of Appeals struck from the order the prohibition with respect to the three categories as to which there was no evidence of violation.

We do not believe the Commission abused the "wide discretion" that it has in a choice of a remedy "deemed adequate to cope with the unlawful practices" disclosed by the record. *Jacob Siegel Co.* v. *Federal Trade Comm'n,* 327 U. S. 608, 611. It is not limited to prohibiting "the illegal practice in the precise form" existing in the past. *Federal Trade Comm'n* v. *Ruberoid Co.,* 343 U. S. 470, 473. This agency, like others, may fashion its relief to restrain "other like or related unlawful acts." *Labor Board* v. *Express Pub. Co.,* 312 U. S. 426, 436. The practice outlawed by § 4 is "misbranding." The disclosure required for a properly branded garment is specified. These disclosure requirements are so closely interrelated that the Commission might well conclude that a retailer who for example failed to disclose that the fur was bleached or dyed might well default when it came to disclosure of the fact that used fur was contained in the garment. One cannot generalize as to the proper scope of these orders. It depends on the facts of each case and a judgment as to the extent to which a particular violator should be fenced in. Here, as in Sherman Act decrees (*Local 167* v. *United States,* 291 U. S. 293, 299; *International Salt Co.* v. *United States,* 332 U. S. 392, 400–401; *International Boxing Club* v. *United States,* 358 U. S. 242,

[7] See note 2, *supra.*

253), the question of the extent to which related activity should be enjoined is one of kind and degree. We sit only to determine if the trier of facts has exercised an allowable discretion. Where the episodes of misbranding have been so extensive and so substantial in number as they were here,[8] we think it permissible for the Commission to conclude that like and related acts of misbranding should also be enjoined as a prophylactic and preventive measure.

Respondent objects to the wording of the cease-and-desist order saying it suggests that the store has sold garments contrary to the disclosure requirements not found to have been violated here. The Commission bows to the suggestion that Part A, par. 1 of the cease-and-desist order be rephrased to enjoin "misbranding fur products by failing to affix labels to fur products showing each element of information required by the Act." We so order.

On this phase of the case the judgment of the Court of Appeals is also reversed, the cease-and-desist order to be rephrased as we have indicated.

*It is so ordered.*

---

[8] The Commission found 12 instances of failure to label the product with the correct name of the animal producing the fur, 15 instances of failure to disclose that the product was bleached, dyed or otherwise artificially colored, and 58 instances of failure to show the country of origin of imported furs. There were in addition 187 other violations of the rules of the Commission which provide additional labeling requirements and standards. See 16 CFR, Pt. 301.