**STANLEY COMPANY OF AMERICA,**
Inc., a corporation, et al.,
Plaintiffs,

v.

**Robert E. McLAUGHLIN et al.,**
Defendants.

Civ. A. No. 2863-60.

United States District Court
District of Columbia.
May 17, 1961.

Douglas A. Clark and Louis Rabil, for plaintiffs.

Chester H. Gray, Corp. Counsel, District of Columbia, John A. Earnest and George H. Clark, Asst. Corp. Counsel, Washington, D. C., for defendants.

LEONARD P. WALSH, District Judge.

This matter comes before the Court on the defendants' "Motion to dismiss or, in the alternative, for summary judgment" and on plaintiffs' "Counter-motion for summary judgment". Oral argument was had, and memoranda of points and authorities filed on behalf of each of the parties.

By this action against the individual members of the Board of Commissioners of the District of Columbia, and J. J. Ilgenfritz, Director, Department of Licenses and Inspections for the District of Columbia, the plaintiffs seek an order requiring defendants to issue a permit to allow repairs and alterations to a structure owned by the plaintiff, Stanley Company of America, Inc., and occupied in part by the plaintiff, Earle Restaurant, Inc., described as Lot 39, Square 290, in the District of Columbia, and known

as premises 501 Thirteenth Street, N. W.

The plaintiff, Stanley Company of America, Inc., filed with the Government of the District of Columbia an application for a building permit for repairs and alterations to the entryway of the Earle Restaurant, together with the plans and specifications therefor. Plaintiffs allege that these plans and specifications complied in all respects with the applicable rules and regulations of the District of Columbia; that the Commissioners of the District of Columbia referred the application to the Commission of Fine Arts, which disapproved the application on September 21, 1959; that the Commissioners of the District of Columbia on August 24, 1960, rejected the Plaintiff's application solely on the ground that the Commission of Fine Arts had disapproved it; that the Commissioners of the District of Columbia should not have referred the application to the Commission on Fine Arts for the reason that the subject property is not within the jurisdiction of the Commission of Fine Arts; and that the plaintiffs will suffer irreparable loss and damage if the permit to repair and remodel the entrance to the premises here involved is not issued.

A permanent Commission of Fine Arts was created by Act of Congress, May 17, 1910, to be composed of seven well-qualified judges of the fine arts, whose duty was to advise "generally upon questions of art when required to do so by the President, or by any committee of either House of Congress." 40 U.S.C.A. § 104. The Shipstead-Luce Act of May 16, 1930, 46 Stat. 366, gave to the Commission of Fine Arts the duty of approving or disapproving plans for the erection or alteration of buildings, the duty having been imposed upon Congress by the Constitution to exercise a reasonable degree of control over the architecture of private or semi-public buildings adjacent to public buildings and grounds of major importance.[1]

As noted by the Corporation Counsel, section 2 of the Act, Title 5, Section 411, D.C.Code, directs the Commissioners of the District of Columbia, in consultation with the National Capital Park and Planning Commission, to prepare plats defining the areas within which applications for building permits were to be submitted to the Commission on Fine Arts for its recommendations.[2]

---

1. Section 1 of the Act, 40 U.S.C.A. § 121, reads in pertinent part as follows:

"In view of the provisions of the Constitution respecting the establishment of the seat of the National Government, the duties it imposed upon Congress in connection therewith, and the solicitude shown and the efforts exerted by President Washington in the planning and development of the Capital City, it is declared that such development should proceed along the lines of good order, good taste, and with due regard to the public interests involved, and a reasonable degree of control should be exercised over the architecture of private or semi-public buildings adjacent to public buildings and grounds of major importance. To this end, hereafter when application is made for permit for the erection or alteration of any building, any portion of which is to front or abut upon the * * *, the portion of Pennsylvania Avenue extending from the Capitol to the White House, * * *, or abutting upon any street bordering any of said grounds or parks, the plans therefor, so far as they relate to height and appearance, color, and texture of the materials of exterior construction, shall be submitted by the Commissioners of the District of Columbia to the Commission of Fine Arts; and the said Commission shall report promptly to said Commissioners its recommendations, including such changes, if any, as in its judgment are necessary to prevent reasonably avoidable impairment of the public values belonging to such public building or park; and said Commissioners shall take such action as shall, in their judgment, effect reasonable compliance with such recommendation; * * * *".

2. See Exhibit A, attached, which is a plat demonstrating the relationship of the premises here in question, 501–13th Street, N. W., to Pennsylvania Avenue and Pulaski Park, N. W.

EXHIBIT A

SQ. 254

6' ALLEY

25'

25'

STREET

60'

FILED
MAY 1 7 1961
HARRY M. HULL, Clerk

25'

SQ. 290

301
13th
STREET

17½

STREET

55'

17½

50'

E

9'

RES. 33
PULASKI PARK

26/4

12'

65'

13TH

20'

SQ. 29

PENN

26/4

AVENUE

LEGEND:

Area included within the jurisdiction
of the Commission of Fine Arts

The Commissioners of the District of Columbia and the National Capital Park and Planning Commission, in pursuance of their statutory authority, adopted a map on August 5, 1930, wherein they defined the area included within the jurisdiction of the Commission of Fine Arts. This plat was revised on November 23, 1937, and later on October 6, 1939; however, neither of the two revisions changed the boundary lines as originally established in the area of Thirteenth Street and Pennsylvania Avenue.

Under a form letter dated September 1, 1959, the Chief of the Permit Branch, Department of Licenses and Inspections, District of Columbia, forwarded the application of the plaintiff to the Commission of Fine Arts, for its consideration and appropriate action. The form letter was returned to the Chief of the Permit Branch on September 21, 1959, with a notation of the action of the Commission of Fine Arts reading, "Disapproved. Recommend restudy without projecting show windows, and using smaller, straight marquise." By letter dated August 24, 1960, the Chief of the Permit Branch informed the plaintiff, care of counsel, Douglas A. Clark, that no further action was intended with respect to the application and the plans were returned therewith.[3]

The government contends that referral of applications such as that in the instant case by the Commissioners of the District of Columbia to the Commission of Fine Arts is in accordance with Congressional directive. It also contends that the plat, a portion of which is depicted in Exhibit A, was approved and adopted by the Commissioners of the District of Columbia and the National Capital Park and Planning Commission pursuant to Act of Congress, and that the boundary as indicated therein at Thirteenth Street and Pennsylvania Avenue, N. W., was established in conformance with the statute. The Government produced a list of 61 other similar cases, dating from January 1955 to August 1960, wherein owners of property between Seventh Street and Fourteenth Street, Northwest, had submitted applications for approval of alterations, etc., where the land did not actually physically touch Pennsylvania Avenue. Plaintiffs meanwhile contend that their property clearly does not front or abut upon Pennsylvania Avenue within the meaning of the Shipstead-Luce Act, and, therefore, plaintiff's property is not subject to the jurisdiction of the Commission of Fine Arts.

The principal question involved here is one of interpretation of section 1 of the Shipstead-Luce Act. It was declared to be a policy of Congress, as stated therein, that the planning and development of Washington, D. C., should be conducted with due regard to the public interest, good taste, etc. It must be noted that Congress stated in section 1 that a "reasonable degree of control should be exercised over the architecture of private or semipublic buildings *adjacent* to public buildings and grounds of major importance." (Emphasis supplied.) The Court will confine itself to this portion of section 1 before going on to other portions.

The term "adjacent" is defined in Webster's New International Dictionary, 2nd Ed., 1939, as meaning: "lying near, close or contiguous, neighboring, bordering on; * * *", and is further illustrated therein to the effect that objects are "adjacent when they lie close to each other, but not necessarily in actual

---

3. The letter stated in part:
"The above information was conveyed to your agent, Mr. B. L. Frishman, with the belief that the restudy requested would be made. As said restudy has not been submitted, and as the Board of Commissioners of the District of Columbia are required by Public Law 231, 71st Congress, to 'take such action as shall in their judgment, effect reasonable compliance with such recommendation' of the Commission of Fine Arts, the Department of Licenses and Inspections may take no further action on the application and plans returned herewith."

contact". Also, as noted in 1 C.J.S., pp. 1464, 1465, *Adjacent* is defined to mean "In ordinary acceptation, the natural and primary, or the ordinary, meaning of the word is close, close at hand, close to, convenient, in the neighborhood or vicinity of, in proximity, near, nearby, neighboring, next to, nigh, present, not necessarily touching or in actual physical contact with". It appears to the Court that it is the word "adjacent" which more accurately describes the control over property which Congress intended to be reposed in the Commission of Fine Arts in making recommendations to the Commissioners of the District of Columbia for the alteration of any building "any portion of which is to front or abut upon the * * * portion of Pennsylvania Avenue extending from the Capitol to the White House". While noting that the most important objection to a bill giving the Fine Arts Commission rather broad power was that the authority of the Commission would be or might be extended to govern structures, adjacent to minor reservations, the Congressional Report on the Shipstead-Luce Act indicates an earlier bill was redrawn to confine the control of the Commission over property to that adjacent to certain specified locations, among which was the portion of Pennsylvania Avenue here involved.[4]

Keeping in mind, therefore, that it is the Court's opinion that it was the intention of Congress to control alterations to buildings *adjacent* to Pennsylvania Avenue, the Court turns its attention to the portion of section 1 wherein the Commission of Fine Art's jurisdiction was set forth. In this portion of the Act the language is stated as giving jurisdiction to the Fine Arts Commission when any portion of the property would "front or abut" on specified grounds, such as Pennsylvania Avenue.

The intransitive verb "front" is defined in Webster's New International Dictionary, 2nd Ed. (1939), as "to face: as, the house *fronts* toward the east". It is noted further that the courts generally have construed the word according to the circumstances of a particular case. 37 C.J.S. p. 1386, Front. The word "abut", on the other hand, is defined as meaning "to border, border on, * * * to touch: and is much less subject to interpretation than the words "adjacent" or "front" and is more restrictive in describing location or premises. However, it is the Court's opinion that the words "front" and "abut" were used in the statute disjunctively rather than conjunctively, and that they must be read in the light of the declared purpose of the statute, which speaks in terms of the control of alterations to buildings adjacent to Pennsylvania Avenue. Taken in this context, the Court considers that the interpretation placed on the word "front", as used in the Shipstead-Luce Act, by the Commissioners of the District of Columbia and the National Capital Park and Planning Commission, in deciding whether the plaintiff's property "fronts or abuts" on Pennsylvania Avenue, is in conformance with the intention of Congress as expressed in the statute.

While the Court has not placed great reliance on the administrative construction of the statute here involved, some weight must certainly be accorded it.

4. S.Rep. No. 68, 71st Cong., 2nd Sess. (1929):

"A bill was drawn to give the Fine Arts Commission some control over the nature of buildings fronting on public grounds. This measure, however, met with several objections. Probably the most important objection was that the authority of the commission would thereby be extended to govern structures adjacent to minor reservations. Such jurisidiction, it was contended, might tend to harass unduly the owners of private property and expose them to unnecessary hardships. As a consequence of these criticisms, the bill was redrawn to confine the control of the commission over property adjacent to certain specified locations, namely, * * * the portion of Pennsylvania Avenue from the Capitol to the White House. * * * This bill, it will be seen, restrains the original proposal to the more important public areas."

524

Federal Trade Commission v. Mandel Bros., Inc., 1959, 359 U.S. 385, 79 S.Ct. 818, 3 L.Ed.2d 893. However, after consideration of the legislative history, the dictionary meaning of the words involved, the administrative interpretation applied, the language of the Act taken in the context in which it appears, and ascribing a standard of a reasonable degree of control to the Commissions as appears to be the declared intention of Congress in the Act, the Court reaches the conclusion that the plaintiff's property is within the jurisdiction of the Commission of Fine Arts.

The Court does not consider the cases involving tax assessments of property "fronting or abutting" on a certain street or area to be controlling in this case, as suggested by the plaintiffs. Crosby v. Moebs, 1932, 61 App.D.C. 42, 57 F.2d 408. What might be considered as fronting on Pennsylvania Avenue for purposes of regulating the planning for buildings along the lines of good order and good taste and fronting along the Avenue for purposes of tax assessments for improvements, etc., may, and undoubtedly would be widely divergent. The Court must construe the terms involved here and must review the interpretation placed on such terms by the administrative agencies involved on the basis of the circumstances as they exist in this specific case. Moreover, the aesthetic value to the citizens of maintaining the parks and avenues of the Capital City along the lines of good taste must be considered here, and the Court cannot fail to recognize that control over such planning and development along Pennsylvania Avenue cannot help but "enhance the value of adjacent private property", including that of the plaintiff as Congress has indicated was its intention in enacting the Shipstead-Luce Act. S.Rep. No. 68, supra, p. 2.

Counsel for the District of Columbia Government will therefore submit an appropriate order, in conformance with this opinion, granting defendants' motion for summary judgment.