**WEST CHESTER AREA SCHOOL DISTRICT,**

v.

**BRUCE and Suzanne C., Parents and Natural Guardians of Chad C.**

**No. CIV.A. 01–1170.**

United States District Court, E.D. Pennsylvania.

March 8, 2002.

Ellis H. Katz, Jason R. Wiley, Gina K. de Peitro, Sweet, Stevens, Tucker & Katz,

New Britain, PA, for West Chester Area School District.

Dennis C. McAndrews, Wayne, PA, for Bruce C., Suzanne C.

### MEMORANDUM AND ORDER

SCHILLER, District Judge.

Through his parents, Chad C., a fourteen-year-old ninth grader diagnosed with Attention Deficit Disorder ("ADD"), seeks special education pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. For the reasons set forth below, I find Chad C. eligible for special services pursuant to IDEA.

## I. FACTS AND PROCEDURAL HISTORY

This matter, as it currently stands, represents the most recent phase in Chad C.'s evolving educational history. While in the second grade, Chad moved to the West Chester Area School District (the "District") from out of state. In the spring of 1997, Chad's fourth grade year, Chad was evaluated for the gifted and learning support programs. The evaluation disclosed that Chad's intellectual functioning was in the high average range, notwithstanding a 21–point discrepancy between his verbal and performance IQ scores as measured by the Wechsler Intelligence Scale for Children–Third Edition ("WISC–III"). This evaluation also disclosed multiple symptoms of ADD, including weaknesses in auditory memory, organizing skills, and concentration. (H.O. at 5–6, ¶¶ 3,4; Dist. Ex. 4.)[1] Nonetheless, the District found Chad did not qualify as an exceptional

student.[2] Instead of providing services under IDEA or § 504 of the Rehabilitation Act, 29 U.S.C. § 794, the District provided Chad with a more informal and less binding Pupil Education Program ("PEP") comprised of modest measures such as multi-step plans for assignments and a focused correction approach to improving Chad's writing. (Dist.Ex.6.)[3] The PEP was intended to support Chad's learning in the fifth through seventh grades.

The PEP, however, was largely disregarded while Chad was in the sixth and seventh grades, and Mrs. C. was advised that implementation of the plan by Chad's teachers was essentially voluntary, with no power of enforcement by the building principal. (H.O. at 6, ¶ 8.) During Chad's seventh grade year, his parents also became concerned about their son's educational progress. Consequently, Chad's parents requested a § 504 service agreement that would become effective when Chad began the eighth grade, and, in September 2000, around the time Chad began eighth grade, Chad's parents also requested the District pay for an Independent Educational Evaluation ("IEE"). In a letter dated September 27, 2002, the District denied the parents' request for an IEE and formally conveyed its determination that Chad was not eligible for § 504 services. (H.O. at 6–7, ¶¶ 12–13; Dist. Ex. 24, 25.) Chad's parents disagreed and requested a due process hearing to determine whether Chad was entitled to special education services under § 504.

Pennsylvania Special Education Hearing Officer Anne Carroll, Esq. (the "Hearing

---

1. "H.O." refers to the decision of Pennsylvania Special Education Hearing Officer Anne Carroll, Esq. dated September 30, 2001. "A.P." refers to the decision of Commonwealth of Pennsylvania Special Education Due Process Appeals Review Panel, No. 1188, dated October 30, 2001.

2. As defined by Pennsylvania law, the term "exceptional" applies both to those students deemed disabled and those deemed gifted.

3. A PEP is a generic term for modifications to regular education unrelated to either IDEA or § 504.

Officer") held a due process hearing, and, on January 23, 2001, found Chad eligible for § 504 accommodations. The District appealed to the Commonwealth Court of Pennsylvania, and Chad's parents removed the matter to this Court, seeking, by way of a preliminary injunction, compliance with the Hearing Officer's decision. Following a hearing on the record, I remanded this matter to the Hearing Officer for the additional determination of whether Chad is entitled to services under IDEA. On September 30, 2001, after hearing additional evidence, the Hearing Officer found Chad to be eligible under IDEA and ordered the District to develop an Individualized Education Plan ("IEP").

The District appealed to the Pennsylvania Special Education Appeals Panel, which reversed the Hearing Officer's decision. Without deciding whether Chad has a qualifying disability, the Appeals Panel determined Chad did not meet IDEA's eligibility requirements because he had not shown a need for special education. Subsequently, Chad's parents turned to this Court for a determination that their son is eligible for accommodations under IDEA.

Throughout his academic career, Chad's performance has varied. For example, Chad finished the seventh grade with As, Bs, and Cs, including Cs in English, Math, and Reading. (H.O. at 10, ¶ 31–32; Dist. Ex. 41.) In the eighth grade, Chad's grades in several major subjects dropped significantly over the course of the academic year. Although Chad performed better in other subjects, Chad finished the fourth quarter of the eighth grade with low Cs in Science and English. As an eighth grader, Chad was generally placed in the most challenging tier of classes; during his current ninth grade year, Chad's highest placement is in Honors classes, the third highest level of academic classes. (H.O. at 11, ¶ 38.)

More importantly, Chad's class placement and grades fail to tell the whole story. Throughout much of Chad's schooling, Chad's mother has worked with him on a daily basis, typically two or three hours each school night plus additional time on the weekends, to ensure assignments were completed and Chad was prepared for tests. In an effort to enhance Chad's sense of independence, Chad's mother became less involved with his studies during his eighth grade year. Tellingly, without his mother's extensive efforts, Chad's grades dropped considerably. (H.O. at 11, ¶ 36.)

## II. DISCUSSION

### A. IDEA

IDEA, originally enacted in 1970 as the Education of the Handicapped Act, PUB.L. No. 91–230, §§ 601–662, 84 STAT. 175, guarantees that all disabled children in states accepting federal funding for education for the disabled will receive a "free appropriate public education." 20 U.S.C. § 1400(c); see also Jeremy H. by Hunter v. Mount Leb. Sch. Dist., 95 F.3d 272, 277 (3d Cir.1996). Consistent with IDEA's purpose of "ensur[ing] that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs," 20 U.S.C. § 1400(d), Congress declared that "improving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity, full participation, independent living, and economic self sufficiency for individuals with disabilities." 20 U.S.C. § 1400(c)(1).

The hallmark provision of IDEA is that "all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their

unique needs." 20 U.S.C. § 1400(c). In this regard, a free appropriate education "consists of educational instruction specially designed to meet the unique needs of the [disabled] child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Board of Educ. v. Rowley*, 458 U.S. 176, 188–89, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Under IDEA, a disabled student is entitled to an IEP, a specially tailored educational program detailing the student's present abilities, educational goals, and specific services designed to achieve those goals within a stated timeframe. *See* 20 U.S.C. § 1401(a)(20).

IDEA places on the states the primary responsibility for satisfying the goals of the statute. Described as a model of "cooperative federalism," *see, e.g., Bernardsville Board of Education v. J.H.*, 42 F.3d 149, 151 (3d Cir.1994); *Town of Burlington v. Department of Education*, 736 F.2d 773, 783 (1st Cir.1984), *aff'd*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), IDEA authorizes federal funding for states providing the special education that the statute requires, but such funding is contingent on state compliance with its array of substantive and procedural requirements, 20 U.S.C. § 1412.

In its IDEA-implementing provisions, Pennsylvania law provides a two-part test for determining whether a student is entitled to an IEP. First, the student must have a qualifying disability, and, second, the student must "need special education." 22 Pa.Code § 14.1 (defining "eligible student"); *see also* 34 C.F.R. § 300.7 (defining "child with a disability"). Acknowledging that ADD is a specifically named disability in the federal regulations, 34 C.F.R. § 300.7(c)(9)(i), the District concedes that the remaining issue related to IDEA is whether or not Chad needs special education. (Br. Oppos. Mot. to Find Chad C. an Eligible Stud. at 4.)

### B. Standard of Review

In authorizing judicial review of administrative proceedings, IDEA dictates that the district court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). Moreover, in their review of administrative proceedings, district courts are not free to substitute their own notions of sound educational policy, rather they must give "due weight" to administrative proceedings. *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034.

The Third Circuit has interpreted this "mandate to accord 'due weight' to the administrative proceedings as a requirement to consider—although not necessarily to accept-the administrative fact findings." *Carlisle Area Sch. Dist. v. Scott*, 62 F.3d 520, 529 (3d Cir.1995)(*citing Oberti*, 995 F.2d at 1219). Moreover, the fact that the Appeals Panel reverses a hearing officer's decision does not allow the district court to abandon this directive to accord "due weight." *Carlisle Area Sch. Dist.*, 62 F.3d at 529–30 (3d Cir.1995). Accordingly, I review the administrative proceedings mindful of these principles.

### C. Chad's Need For Special Education

There is no precise standard for determining whether a student is in need of special education, and well-settled precedent counsels against invoking any bright-line rules for making such a determination. *See Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 247 (3d Cir.1999)(rejecting the notion that what constitutes an appropriate education can be "reduced to a single standard") (citations omitted). Having reviewed the administrative proceedings as a whole and with due deference, I find the

Appeals Panel erred as a matter of law in deciding Chad was not entitled to an IEP.

While in some instances the Appeals Panel's decision is less than pellucid, at its core the Appeals Panel's determination that Chad is ineligible for an IEP is premised on the fact that his grades have never dipped below the passing level. The Supreme Court, however, has clearly repudiated the notion that grades can serve as IDEA's litmus test: "We do not hold today that every handicapped child who is advancing from grade to grade in a regular public school system is automatically receiving a 'free appropriate public education.'" *Rowley*, 458 U.S. at 203, n. 25, 102 S.Ct. 3034. Recently, another court reiterated this point emphatically:

> The [hearing officer's] reasoning, in effect, precludes a child whose academic achievement can be described as "satisfactory" from being able to demonstrate that documented disabilities adversely affected the student's academic performance. This should not and cannot be the litmus test for eligibility under the IDEA. The fact that a child, despite a disability, receives some educational benefit from regular classroom instruction should not disqualify the child from eligibility.... Each child is different, each impairment is different, and the effect of the particular impairment on the particular child's educational achievement is different. [Denying] special education benefits because [a student] is able to pass from grade to grade despite documented impairments that adversely affect his educational performance is wrong.

*Corchado ex rel. Corchado v. Board of Educ.*, 86 F.Supp.2d 168, 176 (W.D.N.Y. 2000).

In addition, the Appeals Panel chastised Chad's parents for not "realizing that the IDEA ... does not provide for an optimal, or potential maximization, standard."

(A.P. at 14.) While the Appeals Panel may have been correct that IDEA "may not require public schools to maximize the potential of disabled students commensurate with the opportunities provided to other children," *Cedar Rapids Cmty. Sch. Dist. v. Garret F. by Charlene F.*, 526 U.S. 66, 77–78, 119 S.Ct. 992, 143 L.Ed.2d 154 (1999)(*citing Rowley*, 458 U.S. at 200, 102 S.Ct. 3034), the Appeals Panel incorrectly gave short shrift to Chad's potential. In particular, the Appeals Panel gave no justification for disregarding the significant discrepancies, as found by the District, between Chad's high verbal IQ and lower performance IQ, and between his verbal IQ and basic reading skills, spelling, and math reasoning. *See* H.O. at 9, ¶ 25 (discussing the "significant discrepancies noted by the School District" between Chad's potential ability and actual performance). In so doing, the Appeals Panel disregarded the Third Circuit's mandate that a student's entitlement to IDEA services "must be gauged in relation to the child's potential." *Polk v. Central Susquehanna Intermediate Unit 16*, 853 F.2d 171, 185 (3d Cir.1988); *see also T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572, 578 (3d Cir.2000)(assessment of what constitutes free appropriate education made in light of "individual needs and potential"); *Ridgewood*, 172 F.3d at 247 (describing *Rowley* as "noting that children of different abilities are capable of greatly different achievements [and adopting] an approach that requires a court to consider the potential of the particular disabled student before it").

Thus, as a matter of law the Appeals Panel erred in focusing on Chad's grades while disregarding Chad's potential. Furthermore, in light of the totality of the evidence, including the extensive amount of time Chad spent out of class receiving remedial and supplement assistance from his mother and Chad's potential as evinced

by the District's testing, I conclude Chad is entitled to an IEP.[4]

## III. CONCLUSION

For the foregoing reasons, I find Chad eligible for special services pursuant to IDEA.[5]

### ORDER

**AND NOW,** this 8th day of March, 2002, upon consideration of the Motion by Bruce, Suzanne, and Chad C. to Find Chad C. an Eligible Student Under IDEA, their Motion to Find Chad. C. an Eligible Student Under § 504 of the Rehabilitation Act, their Petitions to Supplement the Administrative Record, their Motion for Preliminary Injunction, and all the responses thereto, it is hereby **ORDERED** that:

1. The Motion to Find Chad C. an Eligible Student Under IDEA (Document No. 16) is **GRANTED.** West Chester Area School District shall immediately initiate proceedings to prepare an Individualized Education Program for Chad C. that is consistent with IDEA, applicable regulations, and the attached Memorandum.

2. The Motion to Find Chad C. an Eligible Student Under § 504 of the Rehabilitation Act (Document No. 16) is **DENIED** as moot.

3. The Petitions to Supplement the Administrative Record (Document Nos. 25 & 26) are **DENIED** as moot.

4. The Motion for Preliminary Injunction (Document No. 3) is **DENIED** as moot.

---

4. Chad also argues that the District, based on the doctrine of judicial estoppel, should be ordered to enforce the PEP. Because, *inter alia,* there is no indication that the District's conduct has "assaulted the dignity or authority of the court" or was made "in bad faith, i.e. with intent to play fast and loose with the court," this argument is unpersuasive. *Mont-* *rose Med. Group Participating Sav. Plan v. Bulger,* 243 F.3d 773, 781 (3d Cir.2001) (citations omitted).

5. Chad also seeks a service plan pursuant to § 504 of Rehabilitation Act. I need not reach this issue, however, because I have already found Chad eligible for IDEA services.