LIPEZ, Circuit Judge,
concurring.
My colleagues believe that the opinion to this point resolves the issues presented in this appeal and that going further to address the need prong of the eligibility inquiry would be unnecessary. I believe, however, that we should address that difficult legal issue to provide further guidance to the district court on remand. It has been raised by the parties, however imperfectly. That guidance could be important for the disposition of this case and future disputes about eligibility for special education. There is, moreover, a dearth of First Circuit law on the nature of the need inquiry. We should not leave the district court at sea on such an important issue. Hence, I write a separate concurrence to express my views on the subject.
As the panel opinion explains, the dispute between the parties concerning the need inquiry arises from the ambiguity in the .text of the need provision. Section 1401 (3)(A)(ii) of the IDEA provides that a child determined to have one of the qualifying disorders under the first prong must also, “by reason thereof,” “need[ ] special education and related services” to be eligible for special education. 20 U.S.C. § 1401 (3)(A)(ii). The Does argue that the need inquiry should determine whether a child needs special education to remediate the underlying disability, whereas the school district argues that the need inquiry should determine whether a child needs special education to benefit from the school curriculum.
“It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.” Davis v. Mich. Dep’t of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). In Board of Education v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the Supreme Court addressed what a child with a disability (i.e., a child who has satisfied the two-pronged eligibility requirements) is entitled to as part of his or her special education. I find Rowley instructive in understanding the statutory framework and hence rely on it for guidance in interpreting the need inquiry.
Amy Rowley was a deaf student who had minimal residual hearing. See id. at 184, 102 S.Ct. 3034. After she was determined to be eligible for special education, an IEP was developed which provided for, among other things, a hearing aid, instruction from a tutor for the deaf, and separate instruction from a speech therapist. Id. Amy’s parents, the Rowleys, agreed with parts of the IEP, but insisted that Amy be provided a sign-language interpreter in all her academic classes “in lieu of the assistance proposed in other parts of the IEP.” Id. The school refused, having determined that Amy “did not need ... an interpreter” based on, inter alia, “testimony from Amy’s teacher and other persons familiar with her academic and social progress.” Id. at 184-85, 102 S.Ct. 3034. An independent examiner agreed, noting that “an interpreter was not necessary because [the child] was achieving educationally, academically, and socially without such assistance.” Id. at 185, 102 S.Ct. 3034 (internal quotation marks omitted).
The Rowleys challenged the school’s decision in federal court. Id. The district court observed that “Amy is a remarkably well-adjusted child who interacts and communicates well with her classmates and has developed an extraordinary rapport *88 with her teachers.” Id. (internal quotation marks omitted). The court also acknowledged that “she performs better than the average child in her class and is advancing easily from grade to grade.” Id. (internal quotation marks omitted). Despite these' achievements, however, the district court found that Amy “understood] considerably less of what goes on in class than she could if she were not deaf’ and hence was “not learning as much, or performing as well academically, as she would without her handicap.” Id. (internal quotation marks omitted). That “disparity between Amy’s achievement and her potential” led the district court to conclude that her IEP — without also providing an interpreter in her classes — fell short of the “free appropriate public education” to which she was entitled. Id. at 185-86, 102 S.Ct. 3034. Indeed, defining “free appropriate public education” as “an opportunity to achieve [the child’s] full potential commensurate with the opportunity provided to other children,” the district court reasoned that evaluating the sufficiency of special education “requires that the potential of the [child with a disability] be measured and compared to his or her performance, and that the resulting differential or shortfall be compared to the shortfall experienced by [children without disabilities].” Id. at 186, 102 S.Ct. 3034 (internal quotation marks omitted).
The Supreme Court rejected that precise formulation for assessing the sufficiency of an IEP. Recognizing that the IDEA does not prescribe any substantive standard for determining the level of special education that must be afforded to eligible children, the Court nonetheless emphasized that the phrase “free appropriate public education” should be given meaning.[14] See id. at 187-89, 102 S.Ct. 3034; see also 20 U.S.C. § 1400(d)(1)(A) (defining the purposes of the IDEA as, inter alia, “ensuring] that all children with disabilities have available to them a free appropriate public education”). As the Court explained it, “the requirement that a State provide specialized educational services to [children with disabilities] generates no additional requirement that the services so provided be sufficient to maximize each child’s potential ‘commensurate with the opportunity provided other children.’ ” Rowley, 458 U.S. at 198, 102 S.Ct. 3034 (quoting the district court’s opinion). Instead, what Congress sought to provide under the IDEA is education “sufficient to confer some educational benefit upon [the child with a disability].” Id. at 200, 102 S.Ct. 3034. That is to say, instead of “an opportunity to achieve [the child’s] full potential,” id. at 186, 102 S.Ct. 3034, the IDEA ensures “a basic floor of opportunity,” id. at 201, 102 S.Ct. 3034 (internal quotation marks omitted), under which a child with a disability is given access to “the regular classrooms of a public school system,” id. at 203, 102 S.Ct. 3034. The sufficiency of the education provided in the classroom, the Court further explained, is measured by “the educational progress of the child” based on “[r]egular examinations!,] ... grades!,] • • ■ and yearly advancement to higher grade levels.” Id. at 202-03, 102 S.Ct. 3034.
Rowley’s pronouncements on the purpose of special education reject a construction of the need inquiry that is not similarly anchored in the “educational benefits” or “educational progress” that a child derives from school. Id. at 202, 203, 102 S.Ct. *89 3034. Indeed, if an important determinate of the adequacy of special education is the extent to which a child is receiving educational benefits in “the regular classrooms of a public school system,” id. at 203, 102 S.Ct. 3034, it makes little sense to exclude such a consideration from determining whether the child needs special education in the first instance. As the agency has clarified, once “a determination is made that a child has a disability and needs special education and related services, an IEP must be developed for the child.” 34 C.F.R. § 300.306(c)(2). The evaluation procedures used in assessing that need (and more broadly the eligibility) are also used in assessing the adequacy of special education or an IEP. See 20 U.S.C. § 1414(b)(2)(A)®, (ii) (noting that the local educational agency shall “use a variety of assessment tools and strategies ... that may assist in determining” “whether the child is a child with a disability” and “the content of the child’s [IEP]”); 34 C.F.R. § 300.304(b)(1)®, (ii) (same); see also 20 U.S.C. § 1414(c)(B)(iii), (iv) (prescribing the same evaluation process for determining “whether the child needs special education and related services” and “whether any additions or modifications to the special education and related services are needed to enable the child to meet the measurable annual goals set out in the [IEP]”); 34 C.F.R. § 300.305(a)(2)(iii), (iv) (same). Additionally, as Rowley demonstrates, an inquiry into the sufficiency of special education also encompasses (or is capable of encompassing) an examination into the child’s “need.” See 458 U.S. at 185, 102 S.Ct. 3034 (reciting the school’s decision that Amy Rowley did not “need” an interpreter, and the independent examiner’s determination that an interpreter was “not necessary”).
A court must interpret a statute “as a symmetrical and coherent regulatory scheme,” FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000) (quoting Gustafson v. Alloyd Co., 513 U.S. 561, 569, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995)), and “fit, if possible, all parts into an harmonious whole,” id. (quoting FTC v. Mandel Brothers, Inc., 359 U.S. 385, 389, 79 S.Ct. 818, 3 L.Ed.2d 893 (1959)). Reading the eligibility and sufficiency-of-an-IEP determinations as “parts [of] an harmonious whole,” id., I reject the Does’ interpretation of the need inquiry, to the extent that it focuses solely on remediating the underlying disability, without regard to the “educational progress” a child is making in school. Nonetheless, I recognize that remediation of the underlying disability is also relevant in assessing the need. After all, the statute specifies that a child must “need[ ]” special education “by reason [of]” the disorder as identified under the first prong, 20 U.S.C. § 1401(3)(A)(ii), and that special education must be designed “to meet the unique needs of [the] child with a disability,” id. § 1401(29) (emphasis added). Thus, in accordance with the applicable statutory canon and the text of the relevant statute, I understand the need inquiry to assess whether a child with a disorder needs special education to remediate the underlying disability, insofar as the disability impedes the child’s “educational progress” in school or, to put it differently, the “educational benefits” that a child derives from school.
Having so interpreted the need inquiry, the relevance of a child’s academic achievements becomes clear. The Rowley Court noted that “[t]he grading and advancement system ... constitutes an important factor” in determining whether the education provided to eligible children is “appropriate.” 458 U.S. at 203, 102 S.Ct. 3034; see also 34 C.F.R. § 300.305(a)(2)(h) (providing that evaluations include data necessary to determine “the present levels of academic achievement and related developmental *90 needs of the child”). So, too, is a child’s overall academic performance in determining his or her need for specialized instruction. Citing Rowley, the Fifth Circuit held that a child with an Attention Deficit Hyperactivity Disorder (cognizable under the first prong) did not “need” special education because his “passing grades and success on the [statewide standardized] test demonstrated academic progress,” and because his “teachers testified that, despite his behavioral issues, he did not need special education and was achieving social success in school.” Alvin Indep. Sch. Dist. v. A.D. ex rel. Patricia F., 503 F.3d 378, 383-84 (5th Cir. 2007); see also D.A. & J.A. ex rel. M.A v. Meridian Joint Sch. Dist. No. 2, 618 Fed.Appx. 891, 893 (9th Cir. 2015) (considering the child’s academic performance, as attested to by the school, in determining whether he needs special education to “benefit from his education” or “general school curriculum”). District courts and state educational agencies have likewise relied on a child’s academic performance in conducting the need inquiry.[15]
I add an important coda to this conclusion, however. To say that the educational benefits that a child receives in school is an “important factor” in measuring his or her need, Rowley, 458 U.S. at 203, 102 S.Ct. 3034, does not mean that a merely adequate academic performance must compel a finding of ineligibility, regardless of the child’s potential. Indeed, in the absence of a statutory or regulatory directive, I am wary of invoking an absolute standard of educational performance, the satisfaction of which would automatically disqualify a child from eligibility under the need prong. Rowley held only that special education need not maximize a child’s potential, not that special education is' immaterial to helping the child better realize his or her potential.[16] 458 U.S. at 198, 2000, 102 S.Ct. 3034. Additionally, the Rowley Court itself rejected an approach that would deem every child with a disability “who is advancing from grade to grade in a regular public *91 school system” as receiving “appropriate” education. Id. at 203, 102 S.Ct. 3084 n.25. Hence, I acknowledge that, while a child may not establish a need for special education based solely on the disparity between her potential and her current academic performance, such a disparity may be taken into account when the current academic performance is merely adequate and falls far short of the child’s demonstrated potential. The specifics of such a calibrated inquiry should, of course, be further developed on a case by case basis.
In a similar vein, I do not confine “educational progress” or “educational benefits” to strictly academic performance. In Rowley, the district court had found that Amy was “a remarkably well-adjusted child who interact[ed] and communicate[d] well with her classmates and ha[d] developed an extraordinary rapport with her teachers,” id. at 185, 102 S.Ct. 3034 (internal quotation marks omitted), and hence there was no need for the Court to discuss the relevance of a child’s social or behavioral performance to the sufficiency-of-an-IEP inquiry. One can imagine a scenario, however, in which a child with a disorder is struggling with a social or behavioral problem that is traceable to the disability, and that interferes with the child’s educational experience in school. Under such circumstances, I believe that an assessment of “educational benefits” or “educational progress” under the need prong must include, in addition to academic performance, broader aspects of the child’s school experience. That is to say, even a child, like Jane, who is performing well above average according to grades and standardized test results, may be able to show a need for special education, if she can demonstrate a social or behavioral problem that hinders her ability to benefit from the educational experience in school.[17] See West Chester Area Sch. Dist. v. Bruce & Suzanne C. ex rel. Chad C., 194 F.Supp.2d 417, 420 (E.D. Pa. 2002) (“There is no precise standard for determining whether a student is in need of special education, and well-settled precedent counsels against invoking any bright-line rules for making such a determination.”); Venus Indep. Sch. Dist. v. Daniel S. ex rel. Ron S., No. CIV.A. 301CV1746P, 2002 WL 550455, at *11 (N.D. Tex. Apr. 11, 2002) (observing that “need” under the IDEA is not “strictly limited to academics, but also includes behavioral progress and the acquisition of appropriate social skills as well as academic achievement”); see also Robert A. Garda, Jr., Untangling Eligibility Requirements Under the Individuals with Disabilities Act, 69 Mo. L. Rev. 441, 499 (2004) (observing that “attendance and behavior are educational performance that must be addressed despite good academic performance” under the need inquiry because “[t]hey are not merely means to the end of academic achievement, but are themselves educational ends”).
The broader scope of the need inquiry is supported by the agency’s emphasis on a holistic eligibility assessment. As the panel opinion notes, see supra Part II.B, the regulations provide that the eligibility inquiry must include a wide swath of measures and assessments, including a child’s overall academic performance. See, e.g., 34 C.F.R. § 300.306(c)(l)(i) (noting that the eligibility determinations must “[d]raw upon information from a variety of *92 sources, including aptitude and achievement tests, parent input, and teacher recommendations, as well as information about the child’s physical condition, social or cultural background, and adaptive behavior”). The emphasis on an inclusive inquiry applies to the need assessment as it does to an SLD determination. See 20 KS.C. § 1414(c)(1)(B)®, (iii) (presuming that the same evaluation data would be used for determining both whether the child has a disability and “whether the child needs special education and related services”); 34 C.F.R. § 300.304(c)(6) (instructing that the eligibility inquiry should be “sufficiently comprehensive to identify all of the child’s special education and related services needs, whether or not commonly linked to the disability category in which the child has been classified” (emphasis added)).
In construing the scope of the need inquiry broadly, I do not discount the meaning of “need” in the second prong inquiry. 20 U.S.C.- § 1401(3)(A)(ii). Indeed, the panel is in agreement that even a child who performs below average academically or has social or behavior problems as a result of his or her disorder may not need specialized instruction to make educational progress in school, if that child can make such progress with certain accommodations that are not part of special education. See supra Part II.C.
* * *
After careful consideration of the statute and governing case law, I am persuaded that the approach to the need inquiry outlined above is correct. I believe that this guidance is necessary and appropriate for the reasons already stated. I, therefore, add this concurrence.

. Rowley refers to the Education of the Handicapped Act. See 458 U.S. at 179, 102 S.Ct. 3034. This Act was renamed the Individuals with Disabilities Education Act in 1990. See Education of the Handicapped Act Amendments of 1990, Pub. L. No. 101-476, 104 Stat. 1103 (1990).

. See Eric H. ex rel. Gary & Frances H. v. Judson Indep. Sch. Dist., No. Civ.A. SA01CA0804-NN, 2002 WL 31396140, at *2 (W.D. Tex. Sept. 30, 2002) (concluding that there is no "present need for special education" because the child exhibited "noted improvements in his academic performance and social interactions”); Grant ex rel. Grant v. St. James Parish Sch. Bd., No. CIV.A.99-3757, 2000 WL 1693632, at *5 (E.D. La. Nov. 8, 2000) (finding ineligibility for special education where the student’s grades and standardized test results were average or above average); see also Fenton Area Pub. Sch., 44 IDELR 293, 1495-96 (Mich. SEA Nov. 9, 2005) (holding that a child with dyslexia who never received a grade lower than a B + did not need special education, despite the alleged discrepancy between her potential and educational performance, because "[slpecial education is not designed for students who are already successful in regular education”); R.B. ex rel. F.B. v. Napa Valley Unified Sch. Dist., No. 3:04-cv-00094-BZ, 43 IDELR 188, 863 (N.D. Cal. June 2, 2005) (observing that the child did not need special education because she performed above average academically); C.J. ex rel. M.J. & J.J. v. Indian River Cty. Sch. Bd., No. 02-14047-CIV-MOORE, 39 IDELR 186, 1972 (S.D. Fla. July 6, 2003) (finding ineligibility where the student’s "performance in the classroom indicates that she requires neither specially designed services nor related services for her to benefit from education’’); In re Hollister Sch. Dist., 26 IDELR 632, 649 (Cal. June 16, 1997) (“[BJased on [the student’s] ability to receive commendable grades in the absence of special education services, ... the ability to show progress on measures of academic achievement, and to pass successfully from grade to grade, ... [the] student did not require [special education].”).

. Similarly, the Rowley Court rejected the comparison of the disparity between potential and current academic achievements of a child with a disability to the disparities experienced by children without disabilities, not the consideration of such a disparity in the first place. See 458 U.S. at 186, 189-90, 102 S.Ct. 3034.

. This interpretation of "educational benefits” and "educational progress” dispels the Does' concern that consideration of a child’s academic record would lead to an "absurdf ]” outcome where an intelligent child with a physical disability would be deemed not to need special education based solely on the fact that he performs well in academic classes. I reiterate that the construction of the need inquiry provided herein does not treat school grades or standardized test scores as decisive in the eligibility determinations.